UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

THE TOWN OF HIGHLANDS,　　　　　　　　　Case No. 07-CV-07263 (LLS)

　　　　　　　Plaintiff,

　-against-

THE TRAVELERS INDEMNITY COMPANY
and THE CHARTER OAK FIRE INSURANCE
COMPANY,

　　　　　　　Defendants.
------------------------------------X


MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT


　　　　　　　　　　　　　　　Maurice W. Heller (MH-7996)
　　　　　　　　　　　　　　　Allen M. Eisenberg (AE-9102)
　　　　　　　　　　　　　　　HELLER, HOROWITZ & FEIT, P.C.
　　　　　　　　　　　　　　　292 Madison Avenue
　　　　　　　　　　　　　　　New York, New York 10017
　　　　　　　　　　　　　　　(212) 685-7600

　　　　　　　　　　　　　　　Attorneys for Plaintiff

Maurice W. Heller (MH-7996)
Allen M. Eisenberg (AE-9102)
HELLER, HOROWITZ & FEIT, P.C.
292 Madison Avenue
New York, New York 10017
(212) 685-7600

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

| | |
|---|---|
| THE TOWN OF HIGHLANDS, | Case No. 07-CV-07263 (LLS) |
| Plaintiff, | |
| -against- | |
| THE TRAVELERS INDEMNITY COMPANY and THE CHARTER OAK FIRE INSURANCE COMPANY, | |
| Defendants. | |

------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff The Town of Highlands (the "Town") submits this Memorandum of Law in support of its motion for partial summary judgment against Defendants The Travelers Indemnity Company and The Charter Oak Fire Insurance Company (together, "Travelers") directing Travelers to provide the Town with a complete defense to three underlying tort actions under a series of comprehensive general liability insurance policies issued by Travelers to the Town.

## **PRELIMINARY STATEMENT**

In this action, the Town seeks a judgment declaring its rights to a defense and indemnification, under a series of insurance policies issued by Travelers in the 1970's and 1980's, in connection with the Town's potential liability arising from the alleged contamination of groundwater caused by certain alleged releases of gasoline. Specifically, three groups of plaintiffs in three separate underlying tort actions have sued, among others, Sunoco and ExxonMobil, suppliers of gasoline containing an additive known as methyl tertiary butyl ether ("MTBE"), alleging that releases of gasoline containing MTBE have caused environmental harm to their groundwater and have caused injury to their persons and property. Sunoco, in turn, commenced third-party actions against the Town seeking indemnification and/or contribution on the theory that the groundwater contamination purportedly resulting in the injuries alleged by the plaintiffs in the underlying tort actions was caused, in whole or in part, by purported hydrocarbon releases originating from the highway garage owned and operated by the Town (the "Highway Garage"). The Town began operating the Highway Garage in or about 1975, and the Highway Garage ceased operations in or about 1997. The Sunoco complaints in the underlying third-party actions do not allege when the purported injury-causing release(s) of gasoline occurred.

Initially, Travelers assumed the defense of the underlying third-party actions on behalf of the Town, subject to a reservation of rights and defenses in respect of coverage, and paid the first bill tendered by the Town in full. Then, in the midst of its defense, Travelers advised the Town that since it had issued policies of insurance to the Town which were only in effect during a purported seven years of the purported thirty-one-year period of potential Town liability, it will cover only 22% of the Town's defense costs, effectively withdrawing its defense of the Town. The

Travelers Policies are occurrence-based policies. Yet, Travelers has taken this coverage position despite the critical fact that there has been no determination, judicial or otherwise, as to when the alleged injury-causing release(s) of gasoline occurred.

As set forth below, the law of New York is clear that Travelers must, at least preliminarily, provide a complete defense in the underlying third-party actions, despite the fact that the Town may have been uninsured during a period of potential liability and despite the fact that other carriers, unknown to the Town, may also have issued policies to the Town in effect during a period of potential liability.

## STATEMENT OF FACTS[1]

**The Travelers Policies**

The Charter Oak Fire Insurance Company issued the following primary policies of insurance to the Town, each containing a general liability coverage part, effective during the indicated policy periods:

| Policy Number | Policy Period |
|---|---|
| 650-584A016-3-COF-75 | 10/12/75 – 10/12/76 |
| 650-584A016-3-COF-76 | 10/12/76 – 10/12/77 |
| 650-584A016-3-COF-77 | 10/12/77 – 10/12/78 |
| 650-584A016-3-COF-78 | 10/12/78 – 10/12/79 |
| 650-584A016-3-COF-79 | 10/12/79 – 10/12/80 |

---

[1] The supporting documents referenced herein are attached as exhibits to the accompanying Affidavit of Maurice W. Heller ("Heller Aff.").

The Travelers Indemnity Company issued the following primary policies of insurance to the Town, each containing a general liability coverage part, effective during the indicated policy periods:

| Policy Number | Policy Period |
|---|---|
| 650-849E440-9-IND-80 | 10/12/80 – 10/12/81 |
| 650-849E440-9-IND-81 | 10/12/81 – 10/12/82 |

Each of the above policies of insurance issued by The Charter Oak Fire Insurance Company and The Travelers Indemnity Company (together, the "Travelers Policies") (Heller Aff., Ex. C-I) provides comprehensive general liability coverage to the Town. Each of the Travelers Policies, in the "Insuring Agreements" of the comprehensive general liability coverage part, requires Travelers to pay on behalf of the Town all sums which the Town shall become legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies, caused by an occurrence.

Each of the Travelers Policies, in the "Insuring Agreements" of the comprehensive general liability coverage part, also provides that "Travelers shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage [caused by an occurrence], even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient."

The Travelers Policies provide comprehensive general liability coverage to the Town with varying per-occurrence and aggregate limits of insurance for bodily injury and property damage

claims during each policy period. However, payments of the Town's costs of defense are excluded from the limits of insurance provided by the Travelers Policies. In fact, each of the Travelers Policies specifically provides that the duty to defend is only extinguished upon the exhaustion by Travelers of the limits of insurance by the payment of "judgments or settlements" on behalf of the Town.

**The Underlying Actions**

On or about October 17, 2003, Dave Tonneson and other plaintiffs commenced an action in the United States District Court for the Southern District of New York (Case No. 03 Civ. 8248) against Sunoco and ExxonMobil, among others, alleging that releases of gasoline containing MTBE have caused environmental harm to their groundwater and have caused injury to their person and property. (Heller Aff., Ex. J.)

On or about October 24, 2003, Flora Abrevaya and other plaintiffs commenced an action in the Supreme Court of the State of New York, County of Orange (Index No. 7403/03) against Sunoco and ExxonMobil, among others, alleging that releases of gasoline containing MTBE have caused environmental harm to their groundwater and have caused injury to their person and property. (Heller Aff., Ex. K.)

On or about November 17, 2003, Robert Basso and other plaintiffs commenced an action in the United States District Court for the Southern District of New York (Case No. 03 Civ. 9050) against Sunoco and ExxonMobil, among others, alleging that releases of gasoline containing MTBE have caused environmental harm to their groundwater and have caused injury to their person and property. (Heller Aff., Ex. L.)

In or about February 2006, Sunoco commenced third-party actions against the Town in connection with each of the underlying tort actions. (Heller Aff., Ex. M-N.) In each of the underlying third-party actions, Sunoco alleges that the groundwater contamination purportedly resulting in the injuries alleged by the plaintiffs in the underlying tort actions was caused, in whole or in part, by gasoline releases originating from the Highway Garage.[2]

Sunoco specifically alleges that gasoline containing MTBE was released from underground storage tanks, piping, lines and/or equipment at the Highway Garage, or during the filling of underground storage tanks, piping, lines, equipment and/or vehicles, or during the maintenance of vehicles and/or equipment at the Highway Garage, and began to migrate underground, eventually reaching the groundwater of the plaintiffs in the underlying tort actions. Sunoco alleges that the Town breached various duties of care in allowing said releases of gasoline, and either caused or contributed to the alleged harm or threatened harm to the groundwater of the plaintiffs in the underlying tort actions, entitling Sunoco to indemnity or contribution from the Town in the event that Sunoco is found liable to the plaintiffs in the underlying tort actions.

None of the complaints in the underlying tort actions alleges when the purported injury-causing release or releases of gasoline occurred; and none of the complaints in the underlying third-party actions alleges when the purported injury-causing release or releases of gasoline occurred.

The purported injury-causing release or releases of gasoline, as alleged by Sunoco in the underlying third-party complaints, constitute(s) one or more occurrences under the Travelers

---

[2] The Town purchased the site of the Highway Garage in or about January 1975, and the Highway Garage ceased operations in or about 1997. (Heller Aff., Ex. O-P.)

Policies and triggers Travelers' duty to defend the Town under the "Insuring Agreements" in the Travelers Policies. Thus, in or about March 2006, the Town gave prompt and timely notice of the underlying third-party actions to Travelers and tendered the defense to Travelers. (Heller Aff., Ex. Q.)

A number of other carriers had issued policies of liability insurance to the Town covering the period from 1992-2006, and notice of the underlying third-party actions was likewise tendered to them, but these carriers completely denied coverage (including any defense of the Town) on the basis of the industry-standard pollution exclusion contained in policies of this era. (Heller Aff., Ex. R-T.)[3] The Town, despite diligent efforts, was unable to locate insurance policies covering the period from 1983-1991. (Heller Aff., at para. 13.)

**Travelers' Coverage Position**

By letter dated August 30, 2006, Travelers agreed to participate in the Town's defense of the underlying third-party actions, subject to a reservation of all rights and defenses in respect of coverage under the Travelers Policies. (Heller Aff., Ex. V.) Thereafter, through and including September 30, 2006, Travelers paid the Town's costs of defense in full. (Heller Aff., at para. 14.)

Then, by letter dated January 31, 2007, Travelers advised the Town that since it had issued policies of insurance to the Town which were only in effect during a purported seven years of the purported thirty-one-year period of potential Town liability – a period, according to Travelers,

---

[3] The Town's claim for coverage against one carrier (in liquidation) was rejected because the order of liquidation provided that all claims not reported on or before November 15, 2004 are barred against the estate of the carrier. (Heller Aff., Ex. U.)

from January 1975 (when the Highway Garage was acquired by the Town) through March 2006 (when the Town was served with Sunoco's third-party complaints) – it will cover only 22% of the Town's costs of defense. (Heller Aff., Ex. W.)

**The Instant Action**

As a result of the coverage position taken by Travelers – and particularly, its unilateral "pro-rata" assumption of the Town's costs of defense – the Town, on August 15, 2007, commenced the instant action. In its complaint (Heller Aff., Ex. A), the Town seeks: (1) a declaration that it is entitled to a complete defense under the Travelers Policies in respect of the claims asserted by Sunoco against the Town in the underlying third-party actions; (2) a declaration that it is entitled to indemnification under the Travelers Policies in respect of the claims asserted by Sunoco against the Town in the underlying third-party actions; and (3) damages in the amount of all actual costs and expenses incurred by the Town in connection with the defense of the underlying third-party actions. Travelers, on September 27, 2007, filed an answer to the complaint. (Heller Aff., Ex. B.)

## ARGUMENT

As set forth below, Travelers' present obligation to provide a complete defense to the Town under the Travelers Policies is absolutely clear; and any preliminary apportionment of defense costs between Travelers, the Town and any other carrier is patently premature.

In *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 593 N.Y.S.2d 966 (1993), an insurer (CNA) brought action against an asbestos manufacturer (Rapid) and another carrier (National Union) to declare its rights and responsibilities under a number of standard form comprehensive general liability policies. Rapid moved for summary judgment declaring that CNA

was obligated to defend the underlying asbestos actions. CNA cross-moved, in relevant part, for summary judgment declaring that Rapid and National Union must share the costs of defense pro ratably. The New York Court of Appeals held that CNA must provide a complete defense to Rapid in the underlying actions and that CNA was not entitled to a determination of the duties of the other parties to contribute to the costs of defense before being required to pay all of Rapid's defense costs.

The underlying actions in *Continental* involved continuous exposure to asbestos, which, like the instant case, raised questions concerning the timing of the occurrence. The Court of Appeals held that: "[T]he allegation that Rapid was self-insured for a period of time predating the CNA coverage cannot operate to deny Rapid the complete defense to which it is entitled under the CNA policies in the event of overlapping occurrence periods. The question whether the insured itself must contribute to defense costs – an issue on which courts have divided [citations omitted] – is appropriately deferred at least until such time as the underlying lawsuits are shown to involve 'occurrences' during self-insured periods." 80 N.Y.2d at 656, 593 N.Y.S.2d at 974. The Court of Appeals also held that the question of contribution from National Union was premature and noted that, "the insured should not be denied initial recourse to a carrier merely because another carrier may also be responsible [citations omitted]. That is the 'litigation insurance' the insured has purchased." 80 N.Y.2d at 655, 593 N.Y.S.2d at 974.

In *Generali-U.S. Branch v. Caribe Realty Corp.*, 1994 WL 903279 (N.Y. Sup. Dec 5, 1994), an insurer (Generali) moved for an order declaring that its insured (Creel) is obligated to pay a portion of the defense costs incurred by Generali in defending Creel against the claims of the plaintiff in an underlying personal injury action. Generali argued that Creel should be liable for a pro rata share of the costs of defense because there was an undisputed occurrence of lead poisoning

during a period that Creel was not insured. The *Generali* case is notably different from the *Continental* case and the instant case – i.e., it was undisputed that at least one occurrence did in fact happen during a self-insured period. Thus, although the Supreme Court held that "there is a clear basis for apportioning defense costs between Generali and Creel," the Court further held that "it is premature to calculate that apportionment until a determination is reached by a fact finder as to whether there was a second distinct occurrence of lead poisoning. When that determination is made, it will then be appropriate for Generali to seek contribution from Creel for a portion of the defense costs in the underlying personal injury action." 1994 WL 903279, at *2. Significantly, the Court in *Generali* held that the insurer must provide a complete defense to the insured and deferred the issue of the ultimate allocation of defense costs between insurer and insured, even though the insured was "clearly" responsible for some ultimate portion of the costs and the insurer may not be responsible for any ultimate portion of the costs.

In *NL Industries, Inc. v. Commercial Union Ins. Co.*, 926 F.Supp. 446 (D.N.J. April 30, 1996), the New Jersey District Court held that, under New York law, a self-insured or non-insured must contribute, pro-ratably, to the costs of defense on the basis of the allegations of the complaint in the underlying action – i.e., the insurer must contribute if the complaint implicates a period of insurance, and the insured must contribute if the complaint implicates a period of self- or non-insurance. In so holding, the New Jersey court criticized the New York Court of Appeals decision in *Continental* that apportionment of responsibility to the insured should be deferred until the determination of the timing of the occurrence is made. However, the District Court subsequently decided, on motions for reconsideration, that "after a re-reading of *Continental*, the Court of Appeals' 'deferral' appears logical and appropriate: an insured should be entitled to a complete

defense initially; whether it may have to contribute to such costs can and should be decided later." *NL Industries, Inc. v. Commercial Union Ins. Co.*, 935 F.Supp. 513, 521 (D.N.J. July 18, 1996). The court explained the reasons for its reconsideration based upon the rationale underlying the Court of Appeals' decision in *Continental*: "That Court seemed to be concerned that a forced sharing at the out-set would permit insurers to withhold payment for defense costs on the ground that periods of self-insurance are implicated, and then, only after a judicial determination, would the insured be reimbursed. The Court of Appeals clearly wanted to protect the insured, at least in the short-run, and ensure that the insurer provides a 'complete defense.'" 935 F.Supp. at 520. Thus, the District Court held that, "[t]he insurer still must provide a complete defense up-front. It may, however, be entitled to contribution from the insured later, if the existence of occurrences within periods of self-insurance can be demonstrated." 935 F.Supp. at 521-522.

We have found no other decisions under New York law, aside from the above three, that deal with the apportionment between insurer and insured of defense costs. All three, including one by the New York Court of Appeals, hold that any contribution from the insured should be deferred until after a judicial determination that there was an occurrence during a period of self- or non-insurance; and that, until such a determination is made, the insured is entitled to a complete defense, notwithstanding the possibility that the insured or other carriers may later be found to be responsible for a portion of the costs of defense. That is, according to the Court of Appeals, "the 'litigation insurance' the insured has purchased." *Continental*, 80 N.Y.2d at 655, 593 N.Y.S.2d at 974. Other decisions, which we anticipate will be cited by counsel for Travelers in opposition to the Town's motion, deal distinctly with the ultimate apportionment between insurer and insured of the liability payment to be made to the plaintiffs in the underlying actions. These cases are entirely

inapposite, and the difference, of course, is based upon the well-established breadth of the duty to defend versus the duty to indemnify.

In short, Travelers' unilateral and arbitrary preliminary apportionment of the Town's costs of defense is contrary to the settled law of New York and has, in effect, deprived the Town of a defense in the underlying third-party actions.

## CONCLUSION

For the foregoing reasons, the Town respectfully requests that the Court grant its motion for partial summary judgment and direct that Travelers is required – at least until there has been a judicial determination of an occurrence(s) within uninsured periods, and until further order of this Court – to provide the Town with a complete defense to the underlying third-party actions.

Dated: New York, New York
      March 6, 2008

HELLER, HOROWITZ & FEIT, P.C.

By: _____
    Maurice W. Heller (MH-7996)
    Allen M. Eisenberg (AE-9102)
292 Madison Avenue
New York, New York 10017
(212) 685-7600

Attorneys for Plaintiff

TO:  Robert W. Mauriello, Jr.
      GRAHAM CURTIN, P.A.
      4 Headquarters Plaza
      P.O. Box 1991
      Morristown, New Jersey 07962-1991

      Attorneys for Defendants