

CA 01 24
(Ed. 04 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CHANGES IN POLICY—OUR LIMIT OF LIABILITY—NEW YORK

LIABILITY INSURANCE for a covered auto licensed or principally garaged in, or garage operations conducted in, New York, is changed as follows:

OUR LIMIT OF LIABILITY applies except that we will apply the limit shown in the declarations to first provide the separate limits required by the New York Motor Vehicle Safety Responsibility Act as follows:

A.  $10,000 for bodily injury to any one person caused by any one accident,

B.  $20,000 for bodily injury to two or more persons caused by any one accident, and

C.  $5,000 for property damage caused by any one accident.

This provision will not change our total limit of liability.

CA 01 24 (Ed. 04 78)          Copyright, Insurance Services Office, 1978

T_00662
CONFIDENTIAL

COMMERCIAL AUTO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CITIZENS' BAND RADIO COVERAGE – FIRE, POLICE AND EMERGENCY VEHICLES

PHYSICAL DAMAGE INSURANCE is changed as follows:

The exclusion relating to citizens' band radios does not apply to any equipment that is installed in a covered **auto** which is:

**A.** Owned by a police or fire department, or

**B.** Equipped as an emergency vehicle and owned by a political body or any of its agencies; or

**C.** Equipped as an emergency vehicle and owned by a volunteer fire department, volunteer rescue squad or volunteer ambulance corps.

T_00663
CONFIDENTIAL



CA 21 07
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SPLIT UNINSURED MOTORISTS LIMITS

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No. ██████████████████ |
|---|---|
| Named Insured **████ ██ ████████** | Countersigned by _____<br>(Authorized Representative) |

| | | | |
|---|---|---|---|
| **Bodily Injury** | $ | ██████ | Each Person |
| | $ | ██████ | Each Accident |
| **Property Damage** | $ | | Each Accident |

Paragraph 1 of OUR LIMIT OF LIABILITY is changed to read:

1.  Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, our limit of liability is as follows:

    a.  The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit shown in this endorsement for "each person".

    b.  Subject to the limit for "each person", the most we will pay for all damages resulting from bodily injury caused by any one accident is the limit shown in this endorsement for "each accident".

    c.  If coverage for property damage is provided by this insurance, the most we will pay for all damages resulting from property damage caused by any one accident is the limit of property damage shown in this endorsement for "each accident".

CA 21 07 (Ed. 01 78)        Copyright, Insurance Services Office, 1977

T_00664
CONFIDENTIAL

CA 2X 17
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an accident provides at least the amounts required by the applicable law where a covered auto is principally garaged, or

   b. For which the sum of all liability bonds or policies at the time of an accident provides at least the amounts required by the applicable law where a covered auto is principally garaged but their limits are less than the limit of this insurance, or

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

   d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an insured, a covered auto or a vehicle an insured is occupying.

   However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

**B. WE WILL PAY**

1. We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle. The damages must result from bodily injury sustained by the insured caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the uninsured motor vehicle.

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered auto is principally garaged, we will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**C. WE WILL NOT COVER — EXCLUSIONS**
This insurance does not apply to:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Bodily injury sustained by you or any family member while occupying or struck by any vehicle owned by you or any family member which is not a covered auto.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. You or any family member.

2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured.

**E. OUR LIMIT OF LIABILITY**

1. Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any amount payable under this insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount paid under this insurance will reduce any amount an insured may be paid under the policy's LIABILITY INSURANCE.

**F. CHANGES IN CONDITIONS**
The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

CA 2X 17 (Ed. 01 78)          7    Copyright, Insurance Services Office, 1977          Page 1 of 2

T_00665
CONFIDENTIAL

a. Promptly notify the police if a hit-and-run driver is involved, and

b. Promptly send us copies of the legal papers if a suit is brought.

3. **OUR RIGHT TO RECOVER FROM OTHERS** is changed by adding the following:

If we make any payment and the insured recovers from another party, the insured shall hold the proceeds in trust for us and pay us back the amount we have paid.

4. The following Condition is added:

**ARBITRATION**

a. If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

T_00666
CONFIDENTIAL



CA 22 32
(Ed. 06 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION
## (NEW YORK)

The Company agrees with the named insured, as follows:

### Section I—Personal Injury Protection

The Company will pay first party benefits to reimburse for basic economic loss sustained by an eligible injured person on account of personal injuries caused by an accident arising out of the use or operation of a motor vehicle. This coverage applies only to motor vehicle accidents which occur during the policy period and on or after December 1, 1977 and within the United States of America, its territories or possessions, or Canada.

### First Party Benefits

First party benefits, other than death benefits, are payments equal to basic economic loss, reduced by the following:

(a) 20 per cent of the eligible injured person's loss of earnings from work to the extent that an eligible injured person's basic economic loss consists of such loss of earnings;

(b) amounts recovered or recoverable on account of personal injury to an eligible injured person under State or Federal laws providing social security disability or workmen's compensation benefits, or disability benefits under article nine of the New York Workmen's Compensation Law;

(c) the amount of any applicable deductible, provided that such deductible shall apply to each accident, but only to the total of first party benefits otherwise payable to the named insured and any relative as a result of that accident; and

(d) amounts recovered or recoverable on account of personal injury to an eligible injured person for any element of basic economic loss under State or Federal laws providing Medicare benefits (other than lifetime reserve days and provided further that the Medicare benefits utilized herein do not result in a reduction of such person's Medicare benefits for a subsequent illness or injury).

### Basic Economic Loss

Basic economic loss shall consist of medical expense, work loss, other expense and, when death occurs, a death benefit as herein provided. Except for such death benefit, basic economic loss shall not include any loss sustained on account of death. Basic economic loss of each eligible injured person on account of any single accident shall not exceed $50,000, except that any death benefit hereunder shall be in addition thereto.

### Medical Expense

Medical expense shall consist of necessary expenses for:

(a) medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services;

(b) psychiatric, physical and occupational therapy and rehabilitation;

(c) any non-medical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of New York; and

(d) any other professional health services.

These medical expenses will not be subject to a time limitation, provided that within one year after the date of the accident it is ascertainable that further medical expenses may be sustained as a result of the injury. Payments hereunder for necessary medical expenses shall be subject to the limitations and requirements of Section 678 of the New York Insurance Law.

### Work Loss

Work loss shall consist of the sum of the following losses and expenses, up to $1,000 per month for a period of three years from the date of the accident:

(a) loss of earnings from work which the eligible injured person would have performed had such person not been injured, except that an employee who is entitled to receive monetary payments, pursuant to statute or contract with the employer, or who receives voluntary monetary benefits paid for by the employer, by reason of such employee's inability to work because of personal injury arising out of the use or operation of a motor vehicle, shall not be entitled to receive first party benefits for loss of earnings from work to the extent that such monetary payments or benefits from the employer do not result in the employee suffering a reduction in income or a reduction in such employee's level of future benefits arising from a subsequent illness or injury; and

(b) reasonable and necessary expenses sustained by the eligible injured person in obtaining services in lieu of those which such person would have performed for income.

### Other Expenses

Other expenses shall consist of all reasonable and necessary expenses, other than medical expenses and work loss, up to $25 per day for a period of one year from the date of the accident causing injury.

### Death Benefit

Upon the death of any eligible injured person, caused by an accident to which this coverage applies, the Company will pay to the estate of such person a death benefit of $2,000.

### Eligible Injured Person

An eligible injured person is:

(a) the named insured and any relative who sustains personal injury arising out of the use or operation of any motor vehicle; or

T_00667
CONFIDENTIAL

(b) any other person who sustains personal injury arising out of the use or operation of the insured motor vehicle in the State of New York while not occupying another motor vehicle.

**Exclusions**

This coverage does not apply to personal injury sustained by:

(a) the named insured or relative while occupying, or while a pedestrian through being struck by, any motor vehicle owned by the named insured with respect to which the coverage required by the New York Comprehensive Automobile Insurance Reparations Act is not in effect;

(b) any relative while occupying, or while a pedestrian through being struck by, any motor vehicle owned by the relative with respect to which the coverage required by the New York Comprehensive Automobile Insurance Reparations Act is not in effect;

(c) the named insured or relative while occupying, or while a pedestrian through being struck by, a motor vehicle in New York State, other than the insured motor vehicle, with respect to which the coverage required by the New York Comprehensive Automobile Insurance Reparations Act is in effect; however this exclusion does not apply to personal injury sustained in New York State by the named insured or relative while occupying a bus or school bus, as defined in Sections 104 and 142 of the New York Vehicle and Traffic Law, unless that person is the operator, an owner, or an employee of the owner or operator, of such bus or school bus;

[(d) any person in New York State while occupying the insured motor vehicle which is a bus or school bus, as defined in Sections 104 and 142 of the New York Vehicle and Traffic Law, but only if such person is a named insured or relative under any other policy providing the coverage required by the New York Comprehensive Automobile Insurance Reparations Act; however, this exclusion does not apply to the operator, an owner, or an employee of the owner or operator, of such bus or school bus;][1].

(e) any person while occupying a motorcycle;

(f) any person who intentionally causes his own personal injury;

(g) any person as a result of operating a motor vehicle while in an intoxicated condition or while his ability to operate such vehicle is impaired by the use of a drug (within the meaning of Section 1192 of the New York Vehicle and Traffic Law); or

(h) any person while

    (i) committing an act which would constitute a felony, or seeking to avoid lawful apprehension or arrest by a law enforcement officer;

    (ii) operating a motor vehicle in a race or speed test; or

    (iii) operating or occupying a motor vehicle known to be stolen.

**Other Definitions**

When used in reference to this coverage:

(a) "the insured motor vehicle" means a motor vehicle owned by the named insured and to which the bodily injury liability insurance of this policy applies and for which a specific premium is charged;

(b) "motorcycle" means a vehicle as defined in Section 123 of the New York Vehicle and Traffic Law;

(c) "motor vehicle" means a motor vehicle, as defined in Section 311 of the New York Vehicle and Traffic Law, except that it shall include fire and police vehicles, and it shall not include a motorcycle;

(d) "named insured" means the person or organization named in the declarations;[3].

(e) "occupying" means in or upon or entering into or alighting from;

(f) "personal injury" means bodily injury, sickness or disease;

(g) "relative" means a spouse, child, or other person related to the named insured by blood, marriage, or adoption (including a ward or foster child), who regularly resides in the insured's household, including any such person who regularly resides in the household, but is temporarily living elsewhere; and

(h) "use or operation" of a motor vehicle includes the loading or unloading of such vehicle but does not include conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles, unless the conduct occurs off the business premises.

**Conditions**

**Action Against Company.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage.

**Notice.** In the event of an accident, written notice setting forth details sufficient to identify the eligible injured person, along with reasonably obtainable information regarding the time, place and circumstances of the accident, shall be given by, or on behalf of, each eligible injured person, to the Company, or any of the Company's authorized agents, as soon as reasonably practicable, but in no event more than 90 days after the date of the accident, unless the eligible injured person submits written proof that it was impossible to comply with such time limitation due to specific circumstances beyond such person's control. If an eligible injured person or his legal representative institutes a proceeding to recover damages for personal injury under Section 673(2) of the New York Insurance Law, a copy of the summons and complaint or other process served in connection with such action shall be forwarded as soon as practicable to the Company or any of the Company's authorized agents by such eligible injured person or his legal representative.

**Proof of Claim; Medical and Earnings Reports.** As soon as reasonably practicable, the eligible injured person or someone on his behalf shall give to the Company written proof of claim, including full particulars of the nature and extent of the injuries and treatment received and contemplated. Upon request by the Company the eligible injured person or someone on his behalf shall:

(a) execute a written proof of claim under oath;

(b) provide authorization that will enable the Company to obtain medical records; and

(c) provide any other pertinent information that may assist the Company in determining the amount due and payable.

The eligible injured person shall submit to medical examination by physicians selected by, or acceptable to, the Compa-

T_00668
CONFIDENTIAL

ny, when, and as often as, the Company may reasonably require.

**Arbitration.** In the event any person making a claim for first party benefits and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendent of Insurance.

**Reimbursement and Trust Agreement.** To the extent that the Company pays first party benefits, the Company is entitled to the proceeds of any settlement or judgment resulting from the exercise of any right of recovery for damages for personal injury under Section 673(2) of the New York Insurance Law. The Company shall have a lien upon any such settlement or judgment to the extent that the Company has paid first party benefits. An eligible injured person shall:

(a) hold in trust, for the benefit of the Company, all rights of recovery which he shall have for personal injury under Section 673(2) of the New York Insurance Law;

(b) do whatever is proper to secure, and shall do nothing to prejudice, such rights; and

(c) execute, and deliver to the Company, instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

An eligible injured person shall not compromise an action to recover damages brought under Section 673(2) of the New York Insurance Law except:

(a) with the written consent of the Company, or

(b) with approval of the court, or

(c) where the amount of the settlement exceeds $50,000.

**Other Coverage.** Where more than one source of first party benefits required by Article XVIII of the New York Insurance Law and Article VI or VIII of the New York Vehicle and Traffic Law is available and applicable to an eligible injured person in any one accident, this Company is liable to an eligible injured person only for an amount equal to the maximum amount that the eligible injured person is entitled to recover under this coverage, divided by the number of available and applicable sources of required first party benefits. An eligible injured person shall not recover duplicate benefits for the same elements of loss under this coverage or any other mandatory first-party automobile or no-fault automobile insurance coverage issued in compliance with the laws of another state. If the eligible injured person is entitled to benefits under any such mandatory first-party automobile or no-fault automobile insurance for the same elements of loss under this coverage shall be liable only for an amount equal to the proportion that the total amount available under this coverage bears to the sum of the amount available under this coverage and the amount available under such other mandatory insurance for the common elements of loss. However, where another state's mandatory first-party or no-fault automobile insurance law provides unlimited coverage available to an eligible injured person for an element of loss under this coverage, the obligation of this Company is to share equally for that element of loss with such other mandatory insurance until the $50,000 limit of this coverage is exhausted by the payment of that element of loss and any other elements of loss.

### Section II—Excess Coverage

If automobile medical payments coverage or any disability coverages or uninsured motorists coverage are afforded under this policy, such coverages shall be excess insurance over any mandatory or additional personal injury protection benefits paid or payable, or which would be paid or payable but for the application of a deductible, under this or any other automobile no-fault insurance policy.

### Section III—Constitutionality

If it is conclusively determined by a court of competent jurisdiction that the New York Comprehensive Automobile Insurance Reparations Act, or any amendment thereto, is invalid or unenforceable in whole or in part, then, subject to the approval of the Superintendent of Insurance, the Company may amend this policy and may also recompute the premium for the existing or amended policy.

These amendments and recomputations will be effective retroactively to the date that such Act or any amendment is deemed to be invalid or unenforceable in whole or in part.

**T_00669
CONFIDENTIAL**



CA 23 03
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### MULTI-PURPOSE EQUIPMENT

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No. 650-58\\\916-3-COF-79 |
|---|---|
| Named Insured TOWN OF HIGHLAND | Countersigned by |
| | (Authorized Representative) |

Description of Vehicle

**VEHICLE NUMBER 8 AND 9**

The vehicle described in this endorsement is mobile equipment and not an auto.

CA 23 03 (Ed. 01 78)          Copyright, Insurance Services Office, 1977



CA 99 22
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PARTNERSHIP AS NAMED INSURED—NON-OWNERSHIP LIABILITY COVERAGE

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No. CQ1-5250016-3-COF-79 |
|---|---|
| Named Insured TOWN OF HIGHLAND | Countersigned by _____ (Authorized Representative) |

| Premium Basis—Total Number of Partners | | |
|---|---|---|
| Total Number of Partners | Rate Per Partner | Premiums |
| | | |
| | Total Premium | |

A.  No auto owned by any of your partners or members of their households is a covered auto for LIABILITY INSURANCE unless a premium is shown in this endorsement.

B.  WHO IS INSURED is changed by adding the following to paragraph 2:

   c.  A partner of yours for an auto owned by him or her or a member of his or her household.

CA 99 22 (Ed. 01 78)          Copyright, Insurance Services Office. 1977

T_00671
CONFIDENTIAL

The Travelers | **COMBINATION CRIME FORM DECLARATIONS**
(Section V) | CR 2

POLICY NO: 650-584A016-3-COF-79          ISSUE DATE: 10/23/79

**EFFECTIVE DATE** — Same as policy unless otherwise specified:

1.  **INSURANCE AFFORDED AND LIMITS OF LIABILITY** — Insurance is afforded for such of the following Insuring Agreements for which a limit of liability is inserted. When "SEE SCHED" is inserted under Limits of Liability, refer to the applicable Schedule Endorsement.

    a.  **Separate Limits Option**

| | Insuring Agreements | Limits of Liability | Deductible Amount |
|---|---|---|---|
| I | Employee Dishonesty: Per Loss | $ | $ |
| | Per Employee | $ | $ |
| II | Loss Inside the Premises | $ SEE SCHEDULE | |
| III | Loss Outside the Premises | $ SEE SCHEDULE | |
| IV | Money Orders and Counterfeit Paper Currency | $ | $ |
| V | Depositors Forgery | $ | $ |
| XI | Merchandise: Section A — Burglary | $ SEE SCHEDULE | |
| | Section B — Theft | $ | $ |

    __X__ Special Provisions Applies — Limitation to Office Equipment

    b.  **Single Limit Option**

    Insuring Agreements I, II, III, IV & V (as described above)          $          $

    *Does not apply to Insuring Agreement IV

2.  **NUMBERS OF ENDORSEMENTS APPLYING TO THE COMBINATION CRIME FORM AT POLICY INCEPTION:**

    CR 1, CR 4, CR 151, CR 400, CR 402, CR 426

3.  SPECIAL PROVISIONS, IF ANY:

CP-2161A  4-78  Printed in U.S.A.

CR 2                                   HOME OFFICE COPY

T_00672
CONFIDENTIAL

# CRIME PROVISIONS

Crime Provisions are contained in the declarations,
forms and endorsements applicable to this section.

**CRIME—SECTION V**

CP-2247  4-78   Printed in U.S.A.

CR 1

COMBINATION CRIME FORM
**(Section V)**

A. **INSURING AGREEMENTS**—Subject to the COMBI-NATION CRIME FORM DECLARATIONS, the Company insures against:

I—**Employee Dishonesty**—Loss of money, securities and other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees, acting alone or in collusion with others;

II—**Loss Inside the Premises**—Loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof within the premises or within any banking premises or similar recognized places of safe deposit; loss of:

1. other property by safe burglary or robbery within the premises or attempt thereat, and

2. a locked cash drawer, cash box or cash register by felonious entry into such container within the premises or attempt thereat or by felonious abstraction of such container from within the premises or attempt thereat;

Damage to the premises by such safe burglary, robbery or felonious abstraction, or by or following burglarious entry into the premises or attempt thereat, provided with respect to damage to premises the Insured is the owner thereof or is liable for such damage;

As respects the Single Limit Option, loss by robbery within the premises from any employee of money or checks paid to such employee from payroll funds during the work period when such robbery occurred, provided there was on the same occasion a robbery or attempt thereat from a custodian;

III—**Loss Outside the Premises**—Loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof outside the premises while being conveyed by a messenger or any armored motor vehicle company, or while within the living quarters in the home of any messenger;

Loss of other property by robbery or attempt thereat outside the premises while being conveyed by a messenger or any armored motor vehicle company, or by theft while within the living quarters in the home of any messenger;

IV—**Money Order and Counterfeit Paper Currency**—Loss due to the acceptance in good faith, in exchange for merchandise, money or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation, or due to the acceptance in good faith in the regular course of business of counterfeit United States or Canadian paper currency;

V—**Depositors Forgery**—Loss which the Insured or any bank which is included in the Insured's proof of loss and in which the Insured carries a checking or savings account as their respective interests may appear, shall sustain through forgery or alteration

of, on or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money, made or drawn by or drawn upon the Insured, or made or drawn by one acting as agent of the Insured or purporting to have been made or drawn as hereinbefore set forth, including:

(1) Any check or draft made or drawn in the name of the Insured, payable to a fictitious payee and endorsed in the name of such fictitious payee;

(2) Any check or draft procured in a face to face transaction with the Insured, or with one acting as agent of the Insured, by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one so impersonated; and

(3) Any payroll check, payroll draft or payroll order made or drawn by the Insured, payable to bearer as well as to a named payee and endorsed by anyone other than the named payee without authority from such payee;

Whether or not any endorsement mentioned in (1), (2) or (3) is a forgery within the law of the place controlling the construction thereof.

Mechanically reproduced facsimile signatures are treated the same as handwritten signatures.

The Insured shall be entitled to priority for payment over loss sustained by any bank aforesaid. Loss under this Insuring Agreement, whether sustained by the Insured or such bank, shall be paid directly to the Insured in its own name, except in cases where such bank shall have already fully reimbursed the Insured for such loss. The liability of the Company to such bank for such loss shall be part of and not in addition to the amount of insurance applicable to the Insured's office to which such loss would have been allocated had such loss been sustained by the Insured.

If the Insured or such bank shall refuse to pay any of the aforegoing instruments made or drawn as herein before set forth, alleging that such instruments are forged or altered, and such refusal shall result in suit being brought against the Insured or such bank to enforce such payment and the Company shall give its written consent to the defense of such suit, then any reasonable attorneys' fees, court costs or similar legal expenses incurred and paid by the Insured or such bank in such defense shall be construed to be a loss under this Insuring Agreement and the liability of the Company for such loss shall be in addition to any other liability under this Insuring Agreement.

B. **GENERAL AGREEMENTS**

1. **Consolidation—Merger**—If, through consolidation or merger with, or purchase of assets of, some other concern, any persons shall become employees or if the Insured shall thereby acquire the use and control of any additional

CR 4

CP-2140  47A  Printed in U.S.A

T_00674
CONFIDENTIAL

**(Section V)**

premises, the insurance afforded by this form shall also apply as respects such employees and premises, provided the Insured shall give the Company written notice thereof within 30 days thereafter, and shall pay the Company an additional premium computed pro rata from the date of such consolidation, merger or purchase to the end of the current policy period.

2. **Joint Insured**—If more than one Insured is covered under this form, the Insured first named shall act for itself and for every other Insured for all purposes of this form. Knowledge possessed or discovery made by any Insured or by any partner or officer thereof shall, for the purpose of Conditions 7 and 8 of this form, constitute knowledge possessed or discovery made by every Insured. Cancellation of the insurance hereunder as respects any employee as provided in Condition 7 of this form shall apply to every Insured. If, prior to the cancellation or termination of this form, this form is canceled or terminated as to any Insured, there shall be no liability for any loss sustained by such Insured unless discovered within one year from the date of such cancellation or termination. Payment by the Company to the Insured first named of any loss under this form shall fully release the Company on account of such loss. If the Insured first name ceases for any reason to be covered under this form, then the Insured next named shall thereafter be considered as the Insured first named for all purposes of this form.

3. **Loss Under Prior Insurance**

   a. This form applies to loss which would have been recoverable by the Insured (or any predecessor in interest) under prior insurance except for the fact that the time within which to discover loss under such prior insurance had expired, provided that:

   (1) There is no lapse between the time this form becomes effective and the time of cancellation or expiration of such prior insurance; and

   (2) Such loss would have been covered by this form had it been in effect when the acts or events causing such loss were committed or occurred.

   b. The insurance under this General Agreement is part of and not in addition to the amount of insurance afforded by this form and shall not exceed in amount the lesser of:

   (1) The limit of liability applicable to such loss under this form as of its effective date, or

   (2) The amount recoverable under such prior insurance had it continued in effect.

C. **CONDITIONS**—The foregoing Insuring Agreements and General Agreements are subject to the following conditions:

   1. **Policy Period, Territory, Discovery**—Loss is covered under this form only if discovered not later than one year from the end of the policy period. Subject to General Agreement 3:

   a. This form, except under the Employee Dishonesty and Depositors Forgery Insuring Agreements applies only to loss which occurs during the policy period within any of the States of the United States of America, the District of Columbia, Virgin Islands, Puerto Rico, Canal Zone or Canada;

   b. The Employee Dishonesty Insuring Agreement applies only to loss sustained by the Insured through fraudulent or dishonest acts committed during the policy period by any of the employees engaged in the regular service of the Insured within the territory designated above or while such employees are elsewhere for a limited period;

   c. The Depositors Forgery Insuring Agreement applies only to loss sustained during the policy period.

   d. If this Policy or Section V of this Policy is canceled in accordance with the "Cancellation" provision of the **COMMON PROVISIONS** or if any Insuring Agreement of Section V is terminated or deleted by endorsement, the effective date of such cancellation, termination or deletion shall, as respects Section V or such Insuring Agreement, whichever is effective, become the end of the policy period.

   2. **Exclusions**—Except as may be specifically stated to the contrary in this form or in any endorsement applicable to it, this form does not insure against:

   a. Loss due to any fraudulent, dishonest or criminal act by any Insured or, partner therein, whether acting alone or in collusion with others;

   b. Under the Employee Dishonesty Insuring Agreement, loss, or that part of any loss, as the case may be, the proof of which either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation.

   c. Under the Loss Inside the Premises and the Loss Outside the Premises Insuring Agreements, loss due to any fraudulent, dishonest or criminal act by an employee, director, trustee or authorized representative of any Insured, while working or otherwise and whether acting alone or in collusion with others; provided, this exclusion does not apply to safe burglary or robbery or attempt thereat;

CR 4

T_00675
CONFIDENTIAL

The Travelers    COMBIN...  
**(Section V)**

d. Loss due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

e. Under the Loss Inside the Premises and the Loss Outside the Premises Insuring Agreements, loss:
   (1) due to the giving or surrendering of money or securities in any exchange or purchase;
   (2) due to accounting or arithmetical errors or omissions; or
   (3) of manuscripts, books of account or records;

f. Under the Loss Inside the Premises Insuring Agreement, loss of money contained in coin operated amusement devices or vending machines, unless the amount of money deposited within the device or machine is recorded by a continuous recording instrument therein;

g. Under the Loss Outside the Premises Insuring Agreement, loss of insured property while in the custody of any armored motor vehicle company, unless such loss is in excess of the amount recovered or received by the Insured under:
   (1) the Insured's contract with said armored motor vehicle company;
   (2) insurance carried by said armored motor vehicle company for the benefit of users of its service; and
   (3) all other insurance and indemnity in force in whatsoever form carried by or for the benefit of users of said armored motor vehicle company's service, and then this form shall cover only such excess;

h. Under the Loss Inside the Premises and the Loss Outside the Premises Insuring Agreements, loss due to nuclear reaction, nuclear radiation or radioactive contamination, or any act or condition incident to any of the foregoing;

i. Under the Loss Inside the Premises Insuring Agreement, loss, other than to money securities, a safe or vault, by fire whether or not such fire is caused by, contributed to by or arises out of the occurrence of a hazard insured against.

j. Loss due to the surrender of money, securities, or other property away from the premises as a result of a threat to do:
   (1) bodily harm to any person, or
   (2) damage to the premises or property owned by the Insured or held in any capacity by the Insured;

   Provided, however, these exclusions do not apply;

(a) To the Employee Dishonesty Insuring Agreement, if coverage is afforded thereunder, or

(b) Under the Loss Outside the Premises Insuring Agreement, if coverage is afforded thereunder, to loss of money, securities or other property while being conveyed by a messenger when there was no knowledge by the Insured of any such threat at the time the conveyance was initiated.

k. Loss which is the indirect or consequential result of direct loss covered by this form, including but not limited to:
   (1) failure to realize anticipated earnings or other income;
   (2) damages for which the Insured is legally liable, except direct compensatory damages arising from a loss covered by this form; and
   (3) expenses incurred by the Insured in establishing the existence of or amount of loss recoverable under this form.

l. The defense of any legal proceeding brought against the Insured or to expenses incurred by the Insured in prosecuting or defending any legal proceeding.

3. Definitions

a. "BANKING PREMISES" means the interior of that portion of any building which is occupied by a banking institution in conducting its business.

b. "CUSTODIAN" means the Insured or a partner of the Insured or any employee who is duly authorized by the Insured to have the care and custody of the insured property within the premises, excluding any person while acting as a watchman, porter or janitor.

c. "EMPLOYEE" means any natural person (except a director or trustee of the Insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the Insured in the ordinary course of the Insured's business during the policy period and whom the Insured compensates by salary, wage or commissions and has the right to govern and direct in the performance of such service, but does not mean any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character. As applied to loss under the Employee Dishonesty Insuring Agreement, the above words "while in the regular service of the Insured" shall include the first 30 days thereafter; subject, however to Condition 7 of this form and Cancellation Provision of the COMMON PROVISIONS.

CR 4

Page 3 of 7

T_00676
CONFIDENTIAL

(Section v)

d. "MESSENGER" means the Insured or partner of the Insured or any employee who is duly authorized by the Insured to have the care and custody of the insured property outside the premises.

e. "MONEY" means currency, coins, bank notes and bullion, and travelers checks, registered checks and money orders held for sale to the public.

f. "PAYROLL FUNDS" means money and securities intended solely for the payroll of the Insured.

g. "PREMISES" means the interior of that portion of any building which is occupied by the Insured in conducting its business.

h. "ROBBERY" means the taking of insured property:

(1) By violence inflicted upon a messenger or a custodian;

(2) By putting a messenger or a custodian in fear of violence;

(3) By any other overt felonious act committed in his presence and of which he was actually cognizant, provided such other act is not committed by a partner or employee of the Insured;

(4) From the person or direct care and custody of a messenger or custodian who has been killed or rendered unconscious; or

(5) Under the Loss Inside the Premises Insuring Agreement:

(a) from within the premises by means of compelling a messenger or custodian by violence or threat of violence while outside the premises to admit a person into the premises, or to furnish him with means of ingress into the premises; or

(b) from a showcase or show window within the premises while regularly open for business by a person who has broken the glass thereof from outside the premises.

i. "SAFE BURGLARY" means:

(1) The felonious abstraction of insured property from within a vault or safe, the door of which is equipped with a combination lock, located within the premises by a person making felonious entry into such vault or such safe and any vault containing the safe, when all doors thereof are duly closed and locked by all combination locks thereon, provided such entry shall be made by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon the exterior of:

(a) all of said doors of such vault or such safe and any vault containing the safe, if entry is made through such doors; or

(b) the top, bottom or walls of such vault or such safe, and any vault containing the safe through which entry is made, if not made through such doors; or

(2) the felonious abstraction of such safe from within the premises.

j. "SECURITIES" means all negotiable and non-negotiable instruments or contracts representing either money or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include money.

4. **Loss Causes by Unidentifiable Employees**—If a loss is alleged to have been caused by the fraud or dishonesty of any or more of the employees and the Insured shall be unable to designate the specific employee or employees causing such loss, the Insured shall nevertheless have the benefit of the Employee Dishonesty Insuring Agreement, subject to Condition 2.b. of this form, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said employees, and provided, further, that the aggregate liability of the Company for any such loss shall not exceed the limit of liability applicable to the Employee Dishonesty Insuring Agreement.

5. **Ownership of Property; Interest Covered**—The insured property may be owned by the Insured, or held by the Insured in any capacity whether or not the Insured is liable for the loss thereof, or may be property as respects which the Insured is legally liable; provided, the Loss Inside the Premises, the Loss Outside the Premises and the Money Order and Counterfeit Paper Currency Insuring Agreements apply only to the interest of the Insured in such property, including the Insured's liability to others, and do not apply to the interest of any other person or organization in any of said property unless included in the Insured's proof of loss, in which event the third paragraph of Condition 8 of this form.

6. **Books and Records**—The Insured shall keep records of all insured property in such manner that the Company can verify therefrom the amount of loss.

7. **Cancellation as to Any Employee**—The Employee Dishonesty Insuring Agreement shall be deemed canceled as to any employee:

a. From the time that the Insured or any partner, officer or director thereof not in collusion with such employee has knowledge

T_00677
CONFIDENTIAL

or information that such employee has committed any fraudulent or dishonest act in the service of the Insured or otherwise, whether such act is committed before or after the date of employment by the Insured;

b. As of 12:01 A.M., standard time at the address shown in the General Declarations, on the date the Employee Dishonesty Insuring Agreement of this form became effective if such employee was previously canceled from any prior bond or policy of fidelity insurance issued to the Insured or any predecessor in interest of the Insured unless such employee was reinstated under such prior insurance and the Company agrees in writing to include such employee under the coverage of the Employee Dishonesty Insuring Agreement of this form; or

c. As of 12:01 A.M., standard time at the address shown in the General Declarations, on the date specified in written notice mailed or otherwise delivered to the Insured at such address, such date to be not less than 15 days after the date of mailing or delivery.

8. **Duties of the Insured in the Event of Loss**

a. Upon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss, the Insured shall:
(1) Give notice thereof as soon as practicable to the Company or any of its authorized agents and except under the Employee Dishonesty and the Depositors Forgery Insuring Agreement, also to the police if the loss is due to a violation of law, and
(2) File detailed proof of loss, duly sworn to, with the Company within four months after the discovery of loss.

b. Proof of loss under the Depositors Forgery Insuring Agreement shall include the instrument which is the basis of claims for such loss, or if it shall be impossible to file such instrument, the affidavit of the Insured or the Insured's bank of deposit setting forth the amount and cause of loss shall be accepted in lieu thereof.

c. Upon the Company's request, the Insured shall submit to examination by the Company, subscribe the same, under oath if required, and produce for the Company's examination all pertinent records, all at such reasonable times and places as the Company shall designate, and shall cooperate with the Company in all matters pertaining to loss or claims with respect thereto.

9. **Valuation, Payment, Replacement**—In no event shall the Company be liable as respects securities for more than the actual cash value thereof at the close of business on the business day next preceding the day on which the loss .

was discovered, nor as respects other property, for more than the actual cash value thereof at the time of loss; provided, however the actual cash value of such other property held by the Insured as a pledge, or as collateral for an advance or a loan, shall be deemed not to exceed the value of the property as determined and recorded by the Insured when making the advance or loan, nor in the absence of such record, the unpaid portion of the advance or loan plus accrued interest thereon at legal rates.

The Company may, with the consent of the Insured, settle any claim for loss of property with the owner thereof. Any property for which the Company has made indemnification shall become the property of the Company.

In case of damage to the premises or loss of property other than securities, the Company shall not be liable for more than the actual cash value of such property, or for more than the actual cost of repairing such premises or property or of replacing same with property or material of like quality and value. The Company may at its election, pay such actual cash value, or make such repairs or replacements. If the Company and the Insured cannot agree upon such cash value or such cost of repairs or replacements, such cash value or such cost shall be determined by arbitration.

10. **Recoveries**—If the Insured shall sustain any loss covered by this form which exceeds the applicable limit of liability hereunder plus any applicable deductible amount, the Insured shall be entitled to all recoveries made after payment by the Company of loss covered by this form (except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made less the actual cost of effecting such recoveries until reimbursed for such excess loss; and any remainder, or, if there be so such excess loss any such recoveries shall be applied first to the reimbursement of the Company and thereafter to the reimbursement of the Insured for that part of such loss within such deductible amount, if any.

11. **Limits of Liability**

a. Separate Limits Option—Payment of loss under the Employee Dishonesty or Depositors Forgery Insuring Agreements shall not reduce the Companys' liability for other losses under the applicable insuring agreement whenever sustained. The Companys total liability:
(1) Under the Employee Dishonesty Insuring Agreement (per loss basis) for all loss caused by any employee or in which such employee is concerned or implicated;

T_00678
CONFIDENTIAL

(Section v)

(2) Under the Employee Dishonesty Insuring Agreement (per employee basis) as to each employee; or

(3) Under the Depositors Forgery Insuring Agreement for all loss by forgery or alteration committed by any person or in which such person is concerned or implicated, whether such forgery or alteration involves one or more instruments;

is limited to the applicable limit of liability specified in the declarations. The liability of the Company for loss sustained by any or all of the Insured shall not exceed the amount for which the Company would be liable had all such loss been sustained by any one of the Insured.

Except under the Employee Dishonesty and Depositors Forgery Insuring Agreements, the applicable limit of liability stated in the declarations is the total limit of the Companys' liability with respect to all loss of property of one or more persons or organizations arising out of any one occurrence. All loss incidental to an actual or attempted fraudulent, dishonest or criminal act or series or related acts at the premises, whether committed by one or more persons, shall be deemed to arise out of one occurrence.

Regardless of the number of years this form shall continue in force and the number of premiums which shall be payable or paid, the limit of the Companys' liability as specified in the declarations shall not be cumulative from year to year or period to period.

b. **Single Limit Option**—Payment of loss under this form shall not reduce the liability of the Company under this form for other losses provided, however, that the total liability of the Company under this form on account of:

(1) All loss incidental to an actual or attempted fraudulent, dishonest or criminal act or series of related acts, whether committed by one or more persons, at the premises in which no employee is concerned or implicated or in which there is no forgery or alteration of an instrument covered under the Depositors Forgery Insuring Agreement; or

(2) All loss, other than as specified in (a) preceding, caused by acts or omissions of any person (whether one of the employees or not) or acts or omissions in which such person is concerned or implicated;

is limited to the limit of liability stated in the declarations. The liability of the Company for loss sustained by any or all of the Insured shall not exceed the amount for which the Company would be liable had all such loss been sustained by any one of the Insured.

Regardless of the number of years this form shall continue in force and the number of premiums which shall be payable or paid, the Companys' total limit of liability shall not be cumulative from year to year or period to period.

12. **Limits of Liability Under This Form and Prior Insurance**—This provision shall apply only to the Employee Dishonesty and Depositors Forgery Insurance Agreements.

With respect to loss caused by any person (whether one of the employees or not) or in which such person is concerned or implicated or which is chargeable to any employee as provided in Condition 4 of this form and which occurs partly during the period of this insurance and partly during the period of other bonds or policies issued by any of The Travelers Insurance Companies to the Insured or to any predecessor in interest of the Insured and terminated or canceled or allowed to expire and in which the period of discovery has not expired at the time any such loss thereunder is discovered, the total liability of the Travelers Insurance Companies under this form and under such other bonds or policies shall not exceed, in the aggregate, the amount carried under this form or such loss or the amount available to the Insured under such other bonds or policies, as limited by the terms and conditions thereof, for any such loss, if the latter amount be the larger.

13. **Other Insurance**

a. If there is available to the Insured any other insurance or indemnity covering any loss by the Employee Dishonesty or Depositors Forgery Insurance Agreements, the Company shall be liable hereunder only for that part of such loss which is in excess of the amount recoverable or recovered from such other insurance or indemnity, except, as respect the Separate Limits Option, if such other insurance or indemnity is a bond or policy of fidelity insurance:

(1) Any loss covered under such fidelity insurance and the Depositors Forgery Insuring Agreement shall first be paid under the Depositors Forgery Insuring Agreement; and

(2) Any loss covered under both the Employee Dishonesty and the Depositors Forgery Insuring Agreements shall first be paid under the Depositors Forgery Insuring Agreement and the excess, if any, shall be paid under the Employee Dishonesty Insuring Agreement. The Company waives any right of contribution which it may have against any forgery insurance carried by any depository bank which is indemnified under the Depositors Forgery Insuring Agreement.

T_00679
CONFIDENTIAL

b. Under any other Insuring Agreement, if there is any other valid and collectible insurance which would apply in the absence of such Insuring Agreement, the insurance under this policy shall apply only as excess insurance over such other insurance; provided, the insurance shall not apply:

    (1) to property which is separately described and enumerated and specifically insured in whole or in part by any other insurance; or

    (2) To property otherwise insured unless such property is owned by the Insured.

**14. Loss Deductible**

  a. **Employee Dishonesty Insuring Agreement**—The Company shall not be liable on account of any loss through acts or defaults committed at any time whether before or after the effective date of any applicable deductible amount by any of the employees acting alone or in collusion with others, except for the amount of such loss, after deducting the net amount of all reimbursement and recovery, including any cash deposit taken by the Insured, obtained or made by the Insured, other than from any bond or policy of insurance issued by a surety or insurance company and covering such loss, or by the Company on account thereof prior to payment by the Company of such loss in excess of the deuctible amount stated in the declarations. If the limit of liability stated in the declarations applies per employee, and more than one employee is concerned or implicated in such loss, the deductible shall apply to each employee so concerned or implicated

  b. Depositors Forgery Insuring Agreement—The Company shall not be liable on account of any loss through forgery or alteration committed by any person or in which such person is concerned or implicated, whether such forgery or alteration involves one or more instruments, except for the amount in excess of the deductible amount stated in the declarations.

  c. **All Other Insuring Agreements**—The Company shall not be liable on account of any loss, except for the amount in excess of the deductible amount stated in the applicable declarations for such Insuring Agreement.

**15. Legal Action Against The Company**—No action shall lie against the Company unless, as

a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until 90 days after the required proofs of loss have been filed with the Company, nor at all unless commenced within two years from the date when the Insured discovers the loss. If any limitation of time for notice of loss or any legal proceeding herein contained is shorter than that permitted to be fixed by agreement under any statute controlling the construction of this policy, the shortest permissible statutory limitation of time shall govern and shall supercede the time limitation.

**16. Damage**—Loss, except under the Employee Dishonesty and Depositors Forgery Insuring Agreement, includes damage.

**17. Changes**—Changes effected by any endorsement made part of this form shall apply:

  a. Except under Insuring Agreement V, as to loss through acts committed or events occurring after the effective date of such change; or

  b. Under Insuring Agreement V, as to loss sustained after the effective date of such change and also.

  c. If any Limit of Liability is decreased or coverage restricted or narrowed, as to loss through acts committed or events occurring or sustained before the effective date of such change and discovered after the expiration of one year from the effective date of such change for all Insuring Agreements other than Insuring Agreement IB and IC, if applicable and three years from the effective date of such change for Insuring Agreements IB and IC.

As respects to changes in the Limits of Liability, no amount applicable to any Insuring Agreement during any period shall be cumulative with the amount or amounts applicable to such Insuring Agreement during any other period or periods regardless of the number of changes made.

**18. Declarations, Endorsements and Common Provisions**—This form is subject to any declarations, endorsements or common provisions indicated as applicable to it.

T_00680
CONFIDENTIAL

**The Travelers**

## SCHEDULE COVERAGE, PREMISES, MESSENGERS OR ARMORED MOTOR VEHICLES ENDORSEMENT
### (Section V—Combination Crime Form)

CR 151

POLICY NO: 650-584A016-3-COF-79                 ISSUE DATE: 10/23/79

EFFECTIVE DATE—Same as policy unless otherwise specified:

A.  DECLARATIONS

### Limit of Liability

| Premises at Bldg. No. | Insuring Agreement II | Insuring Agreement III | No. of Messengers | No. of Armored Motor Vehicles |
|---|---|---|---|---|
| 1 | $ 3,500 | $ 3,500 | 1 | 0 |
| Any new premises and additional messengers or armored motor vehicles operating therefrom | $ 3,500 | $ 3,500 | | |

B.  **PROVISIONS—As respects Insuring Agreement II — Loss Inside the Premises and Insuring Agreement III — Loss Outside the Premises,** the definition of premises is deleted and replaced by the following:

> **"PREMISES"** means the interior of that portion of any building specified in the declarations above which is occupied by the Insured in conducting its business."

General Agreement I is amended by deleting "or if the Insured shall thereby acquire the use and control of any additional premises" and the words "and premises" appearing therein. As respects any new premises of the Insured, additional to the premises indicated in said declarations, Insuring Agreement II shall apply subject to the limit applicable to such new premises specified in said declarations; and, as respects messengers or armored motor vehicles, additional to the messengers or armored motor vehicles indicated in said declarations, Insuring Agreement III shall apply subject to the limit applicable to such additional messengers or armored motor vehicles specified in said declarations; provided, the Insured shall give the Company written notice of the occupancy of such new premises and the employment of such additional messengers or armored motor vehicles within 60 days thereafter and shall pay the Company an additional premium computed pro rata from such date to the end of the policy period.

CP 2198A  4-78  Printed in U S A

CR 151                 **HOME OFFICE COPY**

T_00681
CONFIDENTIAL

**The Travelers**   INSURING AGREEMENT XI—MERCHANDISE   CR 400
BURGLARY OR THEFT ENDORSEMENT
(Section V—Combination Crime Form)

## A. PROVISIONS

1. **Insuring Agreement—**The following is added to the **COMBINATION CRIME FORM:**

"**XI—Merchandise Burglary or Theft:**

**Section A—Burglary—**Loss by burglary or by **robbery** of a watchman while the **premises** are not open for business, of merchandise, furniture, fixtures and equipment within the **premises** or within a showcase or show window used by the **Insured** and located outside the **premises** but inside the building line of the building containing the premises or attached to said building.

Damage to the **premises** and the exterior thereof, and to the insured property within the **premises** or within such showcase or show window by such burglary, robbery of a watchman or attempt thereat, provided with respect to damage to the premises and the exterior thereof the Insured is the owner of the premises or is liable for such damage.

**Section B—Theft—**Loss by theft of merchandise, furniture, fixtures and equipment within the premises or within a showcase or show window used by the Insured and located outside the premises but inside the building line of the building containing the premises or attached to said building.

Damage to the premises and the exterior thereof, and to the insured property within the premises or within such showcase or show window, by such theft or attempt thereat provided with respect to damage to the premises and the exterior thereof the insured is the owner of the premises or is liable for such damage.

2. **Additional or Amended Conditions Applicable to Insuring Agreement XI**

a. **Exclusions—**Insuring Agreement XI does not insure against:

(1) loss of manuscripts, books of account or records.

(2) loss of furs or articles containing fur which represents their principal value, by removal of such property from within a showcase or show window by a person who has broken the glass thereof from outside the premises or by any accomplice of any such person;

(3) loss occurring while there is any change in the condition of the risk or during a fire in the premises;

(4) damage by vandalism or malicious mischief; or

(5) under Section B:
(a) loss caused by the Insured or anyone acting on the express or implied authority of the Insured, being induced by any fraudulent scheme, trick, device or false pretense to part with title to or possession of any property;

(b) mere disappearance of insured property; or

(c) any shortage disclosed by any inventory unless such shortage can be reasonably shown to have been occasioned by theft, robbery or larceny, or attempt thereat.

b. **Limit of Liability**

(1) **Limit of Liability—Section B—Theft—**The limit of the Company's liability stated in the COMBINATION CRIME FORM declarations for Section B—Theft is part of and not in addition to the limit of liability stated in such declarations for Section A—Burglary.

(2) **Special Limits of Liability—**Subject to the coinsurance requirement, if applicable, and to the "Limits of Liability" Condition

(a) the actual cash value of any one article of jewelry shall be deemed not to exceed $50.

(b) the limit of the Company's liability for loss of the contents of any showcase or show window not opening directly into the interior of the premises is $100, and

(c) subject to the applicable limit of liability, the actual value of property held by the Insured as a pledge, or as collateral for an advance or a loan, shall be deemed not to exceed the value of the property as determined and recorded by the Insured when making the advance or loan, nor, in the absence of such record, the unpaid portion of the advance or loan plus accrued interest thereon at legal rates.

(3) **Inventory Shortages—Section B—Theft—**Mere disappearance of the insured property is not a loss covered under Insuring Agreement XI. In the event that any inventory shortage can be reasonably shown to have been occasioned by robbery, theft or larceny, or attempt thereat, there shall be deducted from the amount thereof when determined an amount equal to the average shortage, as revealed by the last five annual physical inventories, or such lesser number as were made, increased or decreased by the percentage of increase or decrease, if any, in the total gross sales for the 12 month period immediately preceding the discovery of the loss, as compared to the

CR-216/   4-76   Printed in U.S.A.

T_00682
CONFIDENTIAL

The Travelers

**INSURING AGREEMENT XI—MERCHANDISE
BURGLARY OR THEFT ENDORSEMENT
(Section V—Combination Crime Form)**

CR 400

_ average annual gross sales for the period
represented by said inventories.

c. Definitions

(1) "BURGLARY" means the felonious
abstraction of insured property from
within:

(a) a premises by a person feloniously
entering or exiting from such prem-
ises by actual force and violence, as
evidenced by visible marks made by
tools, explosives, electricity or chemi-
cals upon, or physical damage to, the
exterior of such premises at the place
of such entry or to the interior of such
premises at the place of such exit;

(b) a showcase or show window outside
the premises by a person feloniously
entering into such showcase or show
window by actual force and violence,
as evidenced by visible marks
thereon;

(2) "JEWELRY" means jewelry, watches,
necklaces, bracelets, gems, precious or
semiprecious stones, articles containing
one or more gems and articles of gold and
platinum.

(3) "PREMISES" means the interior of that
portion of any building which is occupied
solely by the Insured in conducting its
business, but shall not include:

(a) showcases or show windows not
opening directly into the interior of the
premises or

(b) public entrances, halls, or stairways.

(4) "ROBBERY OF A WATCHMAN" means
the taking of insured property by violence
or threat of violence inflicted upon a pri-
vate watchman employed exclusively by
the Insured and while such watchman is
on duty within the premises.

d. **Inventory Requests**—In the event of loss
hereunder, upon the Company's request the
Insured shall furnish a complete inventory of
all property within the premises not stolen or
damaged, stating the original cost and actual
cash value and quantity thereof.

e. **Other Insurance**—The "Other Insurance"
Condition is amended to read: "If there is any
other valid and collectible insurance which
would apply in the absence of such Insuring
Agreement, the insurance under this Insuring
Agreement shall apply only as excess insur-
ance over such other insurance; provided, the
insurance shall not apply to property:

(1) which is separately described and
enumerated and specifically insured in
whole or in part by any other insurance; or

(2) otherwise insured unless such property is
owned by the Insured or as respects
which the Insured is legally liable;

f. **Reduction In Limit of Liability**—The
occurrence of any loss shall reduce the appli-
cable limit of liability by the extent of the Com-
pany's liability for such loss until the prem-
ises are restored to at least the same condi-
tion of safety as immediately prior to the loss;
but such reduction shall not occur with re-
spect to loss occurring subsequent to the re-
ceipt by the Company of notice of loss for
which the Company is liable under this Insur-
ing Agreement, if the Insured shall maintain
within the premises at least one watchman
while the premises are not open for business.

g. **Recoveries**—Any property recovered after
settlement of a loss shall be applied first to
the expense of the parties in making such re-
covery, with any balance applied as if the re-
covery had been made prior to said settle-
ment and loss readjusted accordingly, and
the "Recoveries" Condition is amended ac-
cordingly. The Insured or the Company upon
recovery of any such property, shall give no-
tice thereof as soon as practicable to the
other.

h. **Inventory Requirement**—The Insured shall,
at least once every period of twelve months
while the insurance is in force, make a physi-
cal inventory of the insured merchandise and
shall keep such inventory as a permanent rec-
ord. Insuring Agreement XI shall not apply to
loss by robbery, theft or larceny, or attempt
thereof, unless there is available such a phys-
ical inventory made within the twelve months
immediately preceding the date of such loss.

i. **Other Conditions**

(1) Provisions c., d. and i. of the "Exclusion"
Condition and the "Ownership of Prop-
erty; Interests Covered" Condition shall
apply to Insuring Agreement XI exactly as
they apply to Insuring Agreement II.

(2) The "Loss Under Prior Insurance"
General Agreement does not apply to In-
suring Agreement XI.

(3) This endorsement is subject to:

(a) any declarations, form or
endorsement indicated as applicable
to it; and

(b) the COMBINATION CRIME FORM
and the COMMON PROVISIONS ex-
cept as otherwise provided in this en-
dorsement.

CR 400

T_00683
CONFIDENTIAL

The Travelers

**INSURING AGREEMENT XI—MERCHANDISE
BURGLARY OR THEFT ENDORSEMENT
(Section V—Combination Crime Form)**

CR 400

B. **SPECIAL PROVISION**—The following special provision applies only if so indicated in the **COMBINATION CRIME FORM** declarations. Insuring Agreement XI applies only to loss of office equipment. The term "office equipment" means machines, supplies, furniture, fittings, fixtures, furnishings, books and instruments used for clerical or administrative purposes but shall not include stock in trade, personal effects and postage or revenue stamps or any substitute thereof.

CR 400

Page 3 of 3

T_00684
CONFIDENTIAL

The Travelers

**SCHEDULE COVERAGE ENDORSEMENT**
(Section V—Combination Crime Form)

CR 402

POLICY NO: 65D-584A016-3-COF-79                    ISSUE DATE: 10/23/79

**EFFECTIVE DATE**—Same as policy unless otherwise specified:

**A. DECLARATIONS**

| Premises at Bldg. No. | Portion Occupied By Insured | Coinsurance Percentage | Coinsurance Limit | Section A Burglary | Section B Theft |
|---|---|---|---|---|---|
| 1 | ENTIRE | NOT APPLICABLE | | $ 3,000 | $ |

**B. PROVISIONS**—Insuring Agreement XI—Merchandise Burglary or Theft, is amended as follows:

1. **Definition Amendment**—The definition of **"premises"** in Insuring Agreement XI—Merchandising Burglary or Theft Endorsement is deleted and replaced by the following:

   "**PREMISES**" means the interior of any building designated in the schedule of the declarations of the Schedule Coverage Endorsement applicable to Insuring Agreement XI. Merchandise Burglary or Theft, but shall not include:

   a. showcases or show windows not opening directly into the interior of the premises, or

   b. public entrances, halls or stairways".

2. **General Agreements Amendment**—The "Consolidation — Merger" General Agreement does not apply to Insuring Agreement XI.

3. **Coinsurance Requirement**—The Company shall not be liable for a greater proportion of a loss of merchandise, exclusive of **jewelry** and of property held by the Insured as a pledge or as collateral, than the limit of liability stated in the schedule in the declarations above bears to the:

   a. coinsurance percentage, as stated in said schedule, of the actual cash value of all such merchandise contained within the **premises** at time of loss, or

   b. coinsurance limit stated in said schedule, whichever is less.

CP-2197A  4-78  Printed in U.S.A

CR 402                    **HOME OFFICE COPY**

T_00685
CONFIDENTIAL

The Travelers                                                    CR A26

POLICY NO: 650-5P4A016-3-COF-79          ISSUE DATE: 10/23/79

**DESIGNATED PROPERTY, EXCLUSION – AGREEMENT X1**

**CLASS OF MERCHANDISE**

**AGREEMENT X1 DOES NOT APPLY TO LOSS OF SUCH MERCHANDISE AS IS SPECIFIED IN THE DECLARATIONS.**

CP-2098A  4-78  Printed in U.S.A.

HOME OFFICE COPY                    Page    of

T_00686
CONFIDENTIAL

| OFF./CODE/DIST | AGENT & CODE | | | | | CD. | PREMIUM | COMM. T | ISSUE DATE |
|---|---|---|---|---|---|---|---|---|---|
| ALNY-002 C-1 | HENRY J. SYLVESTRI   88751 | R | 1 | Y | H3 | INO | 2 RP | 20 | 12/11/7934 |
| | | | | | | 4 | 885 RP | | POLICY CODE |

**CHANGE ENDORSEMENT**                              GEN 10

POLICY NO: 650-58AA016-3-COF-79                ISSUE DATE: 12/11/79

EFFECTIVE DATE: 11/7/79

NAMED INSURED: TOWN OF HIGHLANDS              POLICY EXPIRES: 10/12/80
                                                          (MO. DAY. YR)

PROVISIONAL PREMIUM due under these declarations:   $ 887        _____additional   X return

CHANGES:—It is agreed that the policy is amended as described below.

AS RESPECTS SECTION III AND IV TO ELIMINATE AUTO NO. 9 – 63 ELGIN SWEEPER K436.

TO ELIMINATE COLLISION COVERAGE AS RESPECTS AUTOS NO. 1 THRU 5 AND NO. 8.

AS RESPECTS AUTO NO. 6 COLLISION LIMIT TO READ $1,000 DEDUCTIBLE ANNUAL PREMIUM $306 AND AS RESPECTS AUTO NO. 7 COLLISION LIMIT TO READ $1,000 DEDUCTIBLE ANNUAL PREMIUM $663.

_____
Authorized Agent and Countersignature Date

GEN 10                    HOME OFFICE COPY                    Page 1 of 2

CP-2101A  4-78  Printed in U.S.A.

T_00687
CONFIDENTIAL

**Travelers**

**CHANGE ENDORSEMENT**

GEN 10

IN WITNESS WHEREOF, each company designated for the sections of this policy for which such company is designated as insurer has executed and attested these presents, but this policy shall not be valid unless countersigned by the duly authorized Agent for such company.

**THE TRAVELERS INDEMNITY COMPANY (IND)**
**THE TRAVELERS INDEMNITY COMPANY**
   **OF AMERICA (TIA)**
**THE TRAVELERS INDEMNITY COMPANY**
   **OF ILLINOIS (TIL)**
**THE TRAVELERS INDEMNITY COMPANY**
   **OF RHODE ISLAND (TRI)**
**THE PHOENIX INSURANCE COMPANY (PHX)**
**THE CHARTER OAK FIRE INSURANCE**
   **COMPANY (COF)**

**THE TRAVELERS INSURANCE COMPANY (INS)**

*Secretary*          *President*          *Secretary*          *President*

GEN 10

Page 2 of 2

T_00688
CONFIDENTIAL

| OFF/CODE/DIST | AGENT & CODE | | | | | CO. | PREMIUM | COMM.% | ISSUE DATE |
|---|---|---|---|---|---|---|---|---|---|
| ALNY-002 C-1 | HENRY J. SYLVESTRI    88751 | R | 1 | Y | N | 1 | COF | 266 AP | 20 | 12/11/79SA |
| | | | | | | | | | POLICY CODE |

**CHANGE ENDORSEMENT**

GEN 10

POLICY NO: 650-584A016-3-COF-79                    ISSUE DATE: __12/11/79__

EFFECTIVE DATE: 11/7/79

NAMED INSURED: TOWN OF HIGHLANDS                    POLICY EXPIRES: __10/12/80__

PROVISIONAL PREMIUM due under these declarations:    $ __266__    X additional ___return

CHANGES:—It is agreed that the policy is amended as described below.

AS RESPECTS LOCATION SCHEDULE GEN 4, LOC. 2, BLDG. 3 ADDRESS TO READ: RTE. 9W, FORT MONTGOMERY, ORANGE CO., NY

BLDG. 4 TO READ LOC. 1, ROE PARK (POND) AND FICKENS FIELD, HIGHLAND FALLS, NY

AS RESPECTS BLDG. NO. 5 OCCUPANCY TO READ: BASEBALL DIAMOND AND PLAYGROUND.

AS RESPECTS BUILDING DECLARATIONS PR 7 #1 BUILDING NO. 1 BUILDING LIMIT TO READ $150,000 IN LIEU OF $132,700 AND PERSONAL PROPERTY OF INSURED TO READ: $20,000 IN LIEU OF $11,000.

BUILDING NO. 2 BUILDING LIMIT TO READ: $55,000 IN LIEU OF $53,000 AND PERSONAL PROPERTY OF INSURED TO READ $7,000 IN LIEU OF $7,700.

AS RESPECTS IM 2 NUMBER OF PORTABLE TOILETS TO READ 6 IN LIEU OF 4 THE LIMIT OF LIABILITY TO READ $1,500 IN LIEU OF $1,000.

AS RESPECTS PROPERTY FLOATER SYMBOL F-7139 TO ELIMINATE ITEM 1  2 PORTABLE TOILETS, ITEM 3 TRIUMPH CYCLE BAR AND ITEM 4 HIGH PRESSURE WASHER AND ADD ITEM 8 FOUR SNOW PLOWS @ 2,000 EACH TOTAL LIMIT $8,000 TOTAL EQUIPMENT TO NOW READ $15,200.  LOCATION TO READ LONG POND RECREATION AREAS AND BROOKD LAKE, HIGHLAND FALLS, NY.

_____
Authorized Agent and Countersignature Date

GP-2101A  4/78  Printed in U.S.A.

GEN 10                    HOME OFFICE COPY                    Page 1 of 2

T_00689
CONFIDENTIAL

Travelers

**CHANGE ENDORSEMENT**

GEN 10

IN WITNESS WHEREOF, each company designated for the sections of this policy for which such company is designated as insurer has executed and attested these presents, but this policy shall not be valid unless countersigned by the duly authorized Agent for such company.

THE TRAVELERS INDEMNITY COMPANY (IND)
THE TRAVELERS INDEMNITY COMPANY
    OF AMERICA (TIA)
THE TRAVELERS INDEMNITY COMPANY
    OF ILLINOIS (TIL)
THE TRAVELERS INDEMNITY COMPANY
    OF RHODE ISLAND (TRI)
THE PHOENIX INSURANCE COMPANY (PHX)
THE CHARTER OAK FIRE INSURANCE
    COMPANY (COF)

THE TRAVELERS INSURANCE COMPANY (INS)

_Secretary_          _President_          _Secretary_          _President_

GEN 10

Page 2 of 2

T_00690
CONFIDENTIAL

| OFF/CODE/DIST | AGENT & CODE | | | | | SEC. | CD. | PREMIUM | COMP. |
|---|---|---|---|---|---|---|---|---|---|
| Alny 002<br>C-1 | Henry J. Sylvestri  88751 | E | 1 | Y | N | 3<br>4 | IND | 171ap<br>132ap | 20 |

CHANGE ENDORSEMENT          GEN 10

**POLICY NO:** 650-584A016-3 COF-79

**ISSUE DATE:** 6/25/80

**EFFECTIVE DATE:** 5/23/80

**POLICY EXPIRES:** 10/12/80
(MO. DAY. YR)

**NAMED INSURED:** Town of Highlands

PROVISIONAL PREMIUM due under these declarations:  $  303        X additional     ___ return

CHANGES:—It is agreed that the policy is amended as described below.

As respects Sections III & IV – Auto #10 – '80 Plymouth JL42GAA144791 is added
per schedule CA 000210 attached.

As respects auto #1 – '76 Chev and auto #2 – '78 Chev – Comprehensive coverage
to include full glass coverage per endorsement CA 99310678 attached.

Annual comprehensive premium auto #1 – $48
Annual comprehensive premium auto #2 – $54

*Authorized Agent and Countersignature Date*

CP2101A  4-76  Printed in U.S.A. (2/9)

GEN 10                    HOME OFFICE RECORD (MICROFILM) COPY              Page 1 of 2

T_00691
CONFIDENTIAL

**Travelers**    **CHANGE ENDORSEMENT**    GEN 10

IN WITNESS WHEREOF, such company designated for the sections of this policy for which such company is designated as insurer has executed and attested these presents, but this policy shall not be valid unless countersigned by the duly authorized Agent for such company.

**THE TRAVELERS INDEMNITY COMPANY (IND)**     **THE TRAVELERS INSURANCE COMPANY (INS)**
**THE TRAVELERS INDEMNITY COMPANY**
  **OF AMERICA (TIA)**
**THE TRAVELERS INDEMNITY COMPANY**
  **OF ILLINOIS (TIL)**
**THE TRAVELERS INDEMNITY COMPANY**
  **OF RHODE ISLAND (TRI)**
**THE PHOENIX INSURANCE COMPANY (PHX)**
**THE CHARTER OAK FIRE INSURANCE**
  **COMPANY (COF)**

Secretary    President    Secretary    President

T_00692
CONFIDENTIAL

The Travelers

**ITEM FOUR. SCHEDULE OF COVERED AUTOS YOU OWN**
(See reverse side for explanation of certain entries or absence thereof)

Special Code                SPV
Issue Date   6/25/80

Policy No.  650-584A016-3  COF-79
Page No.   1

| When Used With a | This is Form |
|---|---|
| Business Auto Policy | CA 00 02 10 |
| Truckers Policy | CA 00 13 10 |

| Covered Auto No. | TERRITORY | | DESCRIPTION | | |
|---|---|---|---|---|---|
| | Town & State Where The Covered Auto Will be Principally Garaged | County-Town Code (when applicable) | Year Model: Trade Name; Body Type | | Vehicle Identification Number (VIN) |
| 10 | Fort Montgomery, N.Y. | 340d | '80 Plymouth | | JL42GAA144791 |

| Covered Auto No. | DESCRIPTION (Con't) | Stat/ISO Code | Terr/Zone Code | SURCHARGE | | State Exception Code |
|---|---|---|---|---|---|---|
| | Size GVW, GCW or Vehicle Seating Capacity | | | AR | FR | |
| 10 | | 7911 | 032 | | | 9 |

| Covered Auto No. | "FOR PERIOD" PREMIUM | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Liability | Basic PIP | | | Added PIP | | Property Protection | Medical Payments | Uninsured Motorists | |
| | | Deductible | Rating Basis | Premium | Limit Code | Premium | | | B.I. | P.D. |
| 10 | 162 | | C | 8 | | | | | 1 | |
| **TOTALS** | **162** | | | **8** | | | | | **1** | |

| Covered Auto No. | Cost New Current Symbol or Class | Limit of Liability | Age Group | Comprehensive | | Specified Perils | | Collision | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Deductible | Premium | Coverage | Premium | Deductible | Premium |
| 10 | 7 | ACV | 1 | ACV | 42 | | | 200 | 83 |
| **TOTALS** | | | | | **42** | | | | **83** |

*Applicable to Comprehensive and Specified Perils Coverage

| Covered Auto No. | Name and Address of Loss Payee (The number opposite each entry indicates the auto to which the entry applies, such auto being identified by the same number above) |
|---|---|
| | |

C-19130  NEW 4-78  PRINTED IN U.S.A.  (573)

T_00693
CONFIDENTIAL



CA 99 31
(Ed. 06 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### FULL COVERAGE WINDOW GLASS (NEW YORK)

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No. |
|---|---|
| 5/23/80 | 650-584A016-3 COF-79 |
| Named Insured | Countersigned by |
| Town of Highlands | |
| | (Authorized Representative) |

This endorsement provides only those coverages where a charge is shown in the premium column below. It applies only to a covered auto described or designated in this endorsement.

| Designation or Description of Covered Autos of the private passenger type to which this insurance applies. | Premium for full coverage for window glass breakage. | |
|---|---|---|
| | Comprehensive | Collision |
| ☐  All covered autos of the private passenger type. | | |
| ☒  Each covered auto of the private passenger type described below. | | |
| vehicles #1, 2 & 10 | | |

A. If both collision and comprehensive coverages are provided, breakage of window glass caused by a collision may, if you elect, be treated under collision coverage, instead of comprehensive coverage.

B. If only collision coverage is provided, any window glass breakage caused by a **collision** shall be considered a **collision loss.**

C. No deductible applies for window glass breakage if full coverage window glass is indicated in the schedule.

**CA 99 31** (Ed. 06 78)          Copyright, Insurance Services Office, 1977, 1978

T_00694
CONFIDENTIAL

CHANGE ENDORSEMENT

GEN 10

POLICY NO: 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-3-00R-79

ISSUE DATE: 7/25/80

EFFECTIVE DATE: 7/03/80
(MO., DAY, YR.)

POLICY EXPIRES: 12/12/80
(MO., DAY, YR.)

NAMED INSURED: TOWN OF HIGHLANDS

PROVISIONAL PREMIUM due under these declarations: $ 125.00      X additional      ___return

CHANGES:—It is agreed that the policy is amended as described below.

AS RESPECTS SECTION II SYMBOL GL 2 THE FOLLOWING CLASSIFICATION IS ADDED:

EXHIBITIONS—OUTDOOR—NO SEATING OR GRANDSTANDS      314-79418:
          PREMIUM BASIS B-2000
          BI RATE PER HUND: 3.165
          PD RATE PER HUND: .750
          PI RATE PER HUND: 1.041

AS RESPECTS TOWN OF HIGHLAND INDEPENDENCE DAY CELEBRATION FROM JULY 3RD, 1980, TO
JULY 6TH, 1980, THE TOWN OF HIGHLAND INDEPENDENCE DAY CELEBRATION COMMITTEE CORP.
IS NAMED AS ADDITIONAL INSURED.

Authorized Agent and Countersignature Date

CP-2101A  4-78  Printed in U.S.A. (278)

T_00695
CONFIDENTIAL

Travelers                          **CHANGE ENDORSEMENT**                          GEN 10

IN WITNESS WHEREOF, such company designated for the sections of this policy for which such company is designated as Insurer has executed and attested these presents, but this policy shall not be valid unless countersigned by the duly authorized Agent for such company.

**THE TRAVELERS INDEMNITY COMPANY (IND)**          **THE TRAVELERS INSURANCE COMPANY (INS)**
**THE TRAVELERS INDEMNITY COMPANY**
**OF AMERICA (TIA)**
**THE TRAVELERS INDEMNITY COMPANY**
**OF ILLINOIS (TIL)**
**THE TRAVELERS INDEMNITY COMPANY**
**OF RHODE ISLAND (TRI)**
**THE PHOENIX INSURANCE COMPANY (PHX)**
**THE CHARTER OAK FIRE INSURANCE**
**COMPANY (COF)**

Secretary          President                    Secretary          President

GEN 10                                                           Page 2 of 2

T_00696
CONFIDENTIAL

| OFF/CODE/DIST | AGENT & CODE | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ARES/002 0.1 | HENRY J. SICHINSKI 80752 | | R | 1 | T | B | III IV | 5X0 | XY 5X 15 5X | 5X05 |

CHANGE ENDORSEMENT

GEN 10

POLICY NO: 690-58LA016-3-COF-79

ISSUE DATE: 7/25/80 IV

EFFECTIVE DATE: 7/1/80
(MO. DAY YR.)

POLICY EXPIRES: 10/12/80
(MO. DAY YR.)

NAMED INSURED: TOWN OF HIGHLANDS

PROVISIONAL PREMIUM due under these declarations: $152.00          ___additional     X return

CHANGES:—It is agreed that the policy is amended as described below.

AS RESPECTS SECTIONS III AND IV ITEM NO. 1 – 76 CHEV. 162940550508 IS DELETED

_____
Authorized Agent and Countersignature Date

CP-2101A  4-/8  Printed in U.S.A. (2/9)

T_00697
CONFIDENTIAL

**Travelers**

**CHANGE ENDORSEMENT**

GEN 10

IN WITNESS WHEREOF, each company designated for the sections of this policy for which such company is designated as insurer has executed and attested these presents, but this policy shall not be valid unless countersigned by the duly authorized Agent for such company.

THE TRAVELERS INDEMNITY COMPANY (IND)
THE TRAVELERS INDEMNITY COMPANY
   OF AMERICA (TIA)
THE TRAVELERS INDEMNITY COMPANY
   OF ILLINOIS (TIL)
THE TRAVELERS INDEMNITY COMPANY
   OF RHODE ISLAND (TRI)
THE PHOENIX INSURANCE COMPANY (PHX)
THE CHARTER OAK FIRE INSURANCE
   COMPANY (COF)

THE TRAVELERS INSURANCE COMPANY (INS)

Secretary          President          Secretary          President

GEN 10

Page 2 of 2

T_00698
CONFIDENTIAL



**CHANGE ENDORSEMENT**

POLICY NO: 650-58,4816-1-IND-79    ISSUE DATE: 7/25/80

EFFECTIVE DATE: 9/1/79
(MO., DAY, YR.)

POLICY EXPIRES: 9/1/80
(MO., DAY YR.)

NAMED INSURED: TOWN OF MONROE

PROVISIONAL PREMIUM due under these declarations: $ 123.00    X additional _____ return

CHANGES:—It is agreed that the policy is amended as described below.

WITH RESPECT TO SECTION II, THE FOLLOWING CLASS IS ADDED:

TOWN RECREATION PROGRAM (60011)

| EX RATE | TD RATE |
| 82.663 | 10.165 |

| EX PREM. | TD PREM. |
| $83.00 | $40.00 |

PROVISIONS OF G 115 ADDITIONAL INSURED IS HEREBY ADDED FOR:  ORANGE ROCKLAND
UTILITIES AND CLOVE DEVELOPMENT CORP. FOR LOCATION:

MONROE RECREATION AREA
ORANGE AND ROCKLAND ROAD
MONROE, NEW YORK

_____
Authorized Agent and Countersignature Date

**GEN 10**    HOME OFFICE RECORD (MICROFILM) COPY    Page 1 of 2

CP-2101A  4-78  Printed in U.S.A. (279)

T_00699
CONFIDENTIAL

**Travelers**                    **CHANGE ENDORSEMENT**                    **GEN 10**

IN WITNESS WHEREOF, each company designated for the sections of this policy for which such company is designated as insurer has executed and attested these presents, but this policy shall not be valid unless countersigned by the duly authorized Agent for such company.

**THE TRAVELERS INDEMNITY COMPANY (IND)**       **THE TRAVELERS INSURANCE COMPANY (INS)**
**THE TRAVELERS INDEMNITY COMPANY**
   **OF AMERICA (TIA)**
**THE TRAVELERS INDEMNITY COMPANY**
   **OF ILLINOIS (TIL)**
**THE TRAVELERS INDEMNITY COMPANY**
   **OF RHODE ISLAND (TRI)**
**THE PHOENIX INSURANCE COMPANY (PHX)**
**THE CHARTER OAK FIRE INSURANCE**
   **COMPANY (COF)**

Secretary     President        Secretary     President

GEN 10

Page 2 of 2

T_00700
CONFIDENTIAL

650-584A016-3-COF-79
12/10/79 To 10/12/80

T_00701
CONFIDENTIAL