SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
------------------------------------------------------------------x
FLORA ABREVAYA, BRUCE E. BAKER, MARY L. BAKER,
ANTHONY BRIGANDI, THOMAS R. NICKS, RAYMOND BROWN,
LOUISA M. CABLE, G&C PROPERTIES, INC.,
BENEDICTE CALHOUN, DEMETRIAN J. CALHOUN,
MARY CANAUSA, MICHAEL CANAUSA,
JENNIFER CARRASQUILLO, RUSSELL CARRASQUILLO,
JANE CAVANAGH, JOSEPH CAVANAGH, STUART CHANEY,
JAMES CHRISTOFF, GLORIA CHRISTOFF, LINDA CUTAIA,
CARMELLA EMIRIO, JOHN G. FITZSIMONS, JENEAN FITZSIMONS,
FORT MONTGOMERY ROAD HOLDING CORP.
FORT MONTGOMERY UNITED METHODIST CHURCH,
ROBERT J. GOKEY, PAULA HOLT, TERRENCE HOLT,
JANE LAGUARDIA, VITINA LOPEZ, PAUL LOPEZ,
STEPHEN W. MCANNEY, CAROL L. MCANNEY,
LAURA DADARIO a/k/a LAURA MANZARE; MICHAEL MANZARE;
ANDREW MARCINAK; FRANCES MARCINAK;
ANDREW & REBECCA REALTY, INC.; JOAN C. MILES,
ROBERT G. MONROE, JAMES MORGAN, PATRICIA MORGAN,
BARBARA G. MURPHY, JOHN O'CONNELL, JEANNE O'CONNELL,
DIANE B. PIZZUTI, GEOFFREY D. PROVAN, KAREN ROSSINI,
MICHAEL RODRIGUEZ, ANNMARIE RUSCELLI, ANTHONY RUSCELLI,
MARY L. RUSSELL, BERNARD G. RUSSELL, SR., JOHN RYERSON,
CATHERINE RYERSON, RICHARD SALVA, ELIZABETH SEVIK,
LORI SHELDON, JAMES SHELDON, ANTHONY SQUICCIORINI,
RACHELLE SQUICCIORINI, JOHN M. THIBAULT,
JOSEPHINE THIBAULT, AMY VINGOE, WILLIAM VINGOE,
JOHN P. WORT, JR., MARGARET JEAN WORT

                              Plaintiffs,

                                        INDEX NO.; 2003 - 7403

        - against -                     COMPLAINT

SUNOCO, INC., SUNOCO (R&M) f/k/a SUN COMPANY, INC. (R&M),
MOBIL CORPORATION, EXXON MOBIL CORPORATION
f/k/a EXXON CORPORATION
EXXON MOBIL CORPORATION,
CHESNUT PETROLEUM DISTRIBUTORS
SAL JAMAL, FAVRE BROS. LAND, INC.
DOES 1 through 600 inclusive,

                        Defendants.         **JURY TRIAL
                                            DEMANDED**
------------------------------------------------------------------x

Plaintiffs, Flora Abrevaya, Bruce E. Baker, Mary L. Baker, Anthony Brigandi, Thomas R. Nicks, Raymond Brown, Louisa M. Cable, G&C Properties, Inc., Benedicte Calhoun, Demetrian J. Calhoun, Mary Canausa, Michael Canausa, Jennifer Carrasquillo, Russell Carrasquillo, Jane Cavanagh, Joseph Cavanagh, Stuart Chaney, James Christoff, Gloria Christoff, Linda Cutaia, Carmella Emirio, John G. Fitzsimons, Jenean Fitzsimons, Fort Montgomery Road Holding Corp., Fort Montgomery United Methodist Church, Robert J. Gokey, Paula Holt, Terrence Holt, Jane LaGuardia, Vitina Lopez, Paul Lopez, Laura Dadario a/k/a Laura Manzare; Michael Manzare; Andrew Marcinak; Rebecca Marcinak; Andrew & Rebecca Realty, Inc.; Joan C. Miles, Robert G. Monroe, James Morgan, Patricia Morgan, Barbara G. Murphy, John O'Connell, Jeanne O'Connell, Diane B. Pizzuti, Geoffrey Provan, Karen Rossini, Michael Rodriguez, Annmarie Ruscelli, Anthony Ruscelli, Mary L. Russell, Bernard G. Russell, Sr., John Ryerson, Catherine Ryerson, Richard Salva, Elizabeth Sevik, Lori Sheldon, James Sheldon, Anthony Squicciorini, Rachelle Squicciorini, John M. Thibault, Josephine Thibault, Amy Vingoe, William Vingoe, John P. Wort, Jr., Margaret Jean Wort, by and through their attorneys, as and for their Complaint against the above named Defendants, allege upon information and belief that at all relevant times the following;

## THE PARTIES

## PLAINTIFFS

1.      Plaintiffs, and each of them, currently own, lease, rent and otherwise are entitled to the exclusive possession, of residential, commercial and other property in the State of New York, County of Orange, Town of Highlands Hamlet of Fort Montgomery. Plaintiffs presently have the exclusive right to appropriate and use groundwater produced by wells on their property for water supplies.

2.    Plaintiff Flora Abrevaya, is an adult citizens and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and owns property on which she resided at 15 Grove Place. The Plaintiff Flora Abrevaya relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from her well have shown that her water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

3.    Plaintiffs Bruce E. and Mary L. Baker are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 4 Kreiger Road. The Plaintiffs Bruce E. and Mary L. Baker rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

4.    Plaintiffs Anthony Brigandi and Thomas R. Nicks, are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and are owners of property on which they own as an investment and derive income there from by renting the premises at 8 Wayne Avenue. The Plaintiffs Anthony Brigandi and Thomas R. Nicks rent to tenants at 8 Wayne Avenue who rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

5.    Plaintiff Raymond Brown is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, and State of New York and owns property on which he resides at 119 Firefighters Memorial Drive. The Plaintiff Raymond Brown relies for drinking, bathing, cooking, cleaning and all other ordinary

3

and domestic purposes on water from a well on the property. Water samples taken from his well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

6.    Plaintiff Louisa M. Cable, is an adult citizens and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and owns property on which she resided at 149 Canterbury Road. The Plaintiff Louisa M. Cable relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from her well have shown that her water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

7.    Plaintiff G&C Properties, Inc., is a domestic corporation organized under the laws of the state of New York with its principal place of business at 149 Canterbury Road, Fort Montgomery, and Town of Highlands. The Plaintiff G&C Properties, Inc., owns property serviced by wells as investment property at 104 Firefighters Memorial Drive, Fort Montgomery, Town of Highlands that currently serve multiple tenants who rent four apartments and who rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well that services the properties. Water samples taken from the well have shown that the water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

8.    Plaintiffs Benedicte and Demetrian J. Calhoun are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 8 Miles Lane. The Plaintiffs Benedicte and Demetrian J. Calhoun rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for

4

bottled water.

9.    Plaintiffs Mary and Michael Canausa are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 169 Canterbury Road. The Plaintiffs Mary and Michael Canausa rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

10.    Plaintiffs Jennifer and Russell Carrasquillo are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 13 Murphy Road. The Plaintiffs Jennifer and Russell Carrasquillo rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

11.    Plaintiffs Jane and Joseph Cavanagh are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property at 16 St. Mark's Place. The Plaintiffs Jane and Joseph Cavanagh rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

12.    Plaintiff Stuart Chaney is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which he resides at 128 Canterbury Road. The Plaintiff Stuart Chaney relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on

5

water from a well on the property. Water samples taken from his well have shown that his water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

13.    Plaintiffs James and Gloria Christoff are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 12 Fulton Road. The Plaintiffs James and Gloria Christoff rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

14.    Plaintiff Linda Cutaia is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, and State of New York and owns property on which she resided at 15 Grove Place. The Plaintiff Linda Cutaia relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from her well have shown that her water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

15.    Plaintiff Carmella Emirio is an adult citizen and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, and State of New York and owns property on which she resides at 114 Montgomery Road. The Plaintiff Carmella Emirio relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from her well have shown that her water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

16.    Plaintiffs John G. and Jenean Fitzsimons are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 33 Franklin Street. The Plaintiffs John G. and

6

Jenean Fitzsimons rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

17.    Plaintiff Fort Montgomery Road Holding Corp. is a domestic corporation organized under the laws of the state of New York with its principal place of business at 57 Montgomery Road, Fort Montgomery, and Town of Highlands. The Plaintiff Fort Montgomery Road Holding Corp., owns property serviced by wells as investment property at 4 Montgomery Road, Fort Montgomery, Town of Highlands that currently serve multiple tenants who rent five apartments and who rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well that services the properties. Water samples taken from the well have shown that the water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

18.    Plaintiff Fort Montgomery United Methodist Church is a duly organized church located in the Town of Highlands, Hamlet of Fort Montgomery, Orange County, and State of New York and owns property at Rt. 9W. The Plaintiff Fort Montgomery United Methodist Church's congregation relies for drinking, cleaning and all other ordinary and domestic purposes water from a well on the property. Water samples taken from the well have shown that the water is contaminated with MTBE at a concentration of 5.2 ppb. There is no other water supply that could be used or that is available to be used except for bottled water.

19.    Plaintiff Robert J. Gokey is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which he resides at 10 Highland Avenue. The Plaintiff Robert J. Gokey relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from his well have

7

shown that his water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

20.    Plaintiffs Paula and Terrence Holt are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 111 Firefighters Memorial Drive. The Plaintiffs Paula and Terrence Holt rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

21.    Plaintiff Jane LaGuardia is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, and State of New York and owns property on which she resides at 137 Canterbury Road. The Plaintiff Jane LaGuardia relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from the well have shown that the water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

22.    Plaintiffs Vitina and Paul Lopez are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and have an interest in property on which they reside at 8 Murphy Road. The Plaintiffs Vitina and Paul Lopez rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

23.    Plaintiffs Laura Dadario a/k/a Laura Manzare and Michael Manzare are adult citizens and residents of the Town of Orangeburg, Rockland County, State of New York and own investment property which they rent to tenants for domestic use at 4

8

Murphy Road, Hamlet of Fort Montgomery, Town of Highlands, County of Orange and State of New York. The Plaintiffs tenants rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

24.    Plaintiffs Andrew and Frances Marcinak are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 15 Tone Road. The Plaintiffs Andrew and Frances Marcinak rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

25.    Plaintiff Andrew and Rebecca Realty, Inc., is a domestic corporation organized under the laws of the State of New York with its principal place of business at 888 Rt. 9W, Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and owns investment property consisting of six apartment rental units, a delicatessen and a hair salon 888 Rt. 9W. The Plaintiff Andrew and Rebecca Realty, Inc's tenants occupying the rental apartments. The delicatessen and the hair salon spaces rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic and commercial purposes on water from a well on the property. Water samples taken from the well have shown that the water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

26.    Plaintiffs Stephen W. and Carol L. McAnney are adult citizens and resident of the Town of Highlands, County of Orange, State of New York and own property on which they reside at 11 St. Mark's Place. The Plaintiffs Stephen W. and Carol L. McAnney rely for drinking, bathing, cooking, cleaning and all other ordinary

9

and domestic purposes on water from a well on the property. Water samples taken from the well have shown that the water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

27.     Plaintiff Joan C. Miles is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and owns property on which she resides at 12 Miles Lane. The Plaintiff Joan C. Miles relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from the well have shown that the water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

28.     Plaintiff Robert G. Monroe is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and owns property on which he resides at 15 Franklin Street. The Plaintiff Robert G. Monroe relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from his well have shown that his water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water

29.     Plaintiffs James and Patricia Morgan are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property as an investment and rent to tenants at 16 Drew Road. The Plaintiffs James and Patricia Morgan are members of Drew Road Association, a homeowners association established pursuant to a deed recorded in the office of the Orange County Clerk, State of New York on or around the year 1939 and have an interest in two wells that supply the residence, one well which their property previously relied on water for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes that is turned off due to contamination by MTBE. Water samples taken from the previously used well have shown that the water is contaminated with MTBE.

10

30.    Plaintiff Barbara G. Murphy is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, and State of New York and has an interest in property at 54 Montgomery Road. The Plaintiff Barbara G. Murphy relied for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from the well have shown that the water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

31    Plaintiffs John and Jeanne O'Connell who reside at 3 Wayne Avenue in the Town of Highlands, Hamlet of Fort Montgomery, County of Orange, State of New York and who own property serviced by wells as investment property at 7 Wayne Avenue, Fort Montgomery, Town of Highlands, County of Orange, State of New York that currently serve tenants who rent and who rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well that services the properties. Water samples taken from the well have shown that the water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

32.    Plaintiff Diane B. Pizzuti who lives at 144 Townline Road, Town of Nanuet, County of Rockland owns property serviced by wells as investment property at 25 Miles Lane, Fort Montgomery, Town of Highlands, County of Orange, State of New York that currently serve tenants who rent and who rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well that services the properties. Water samples taken from the well have shown that the water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

33.    Plaintiff Geoffrey D. Provan is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, and State of New York and owns property on which he resides at 28 Tonneson Drive. The Plaintiff Geoffrey Provan

11

relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes water from a well on the property. Water samples taken from his well have shown that their water is contaminated with MTBE at a concentration of at least 3.9 ppb. There is no other water supply that could be used or that is available to be used except for bottled water.

34.    Plaintiffs Karen Rodriguez and Michael Rossini are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 46 Montgomery Road. The Plaintiffs Karen Rodriguez and Michael Rossini rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

35.    Plaintiffs Annmarie and Anthony Ruscelli are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 108 Canterbury Road. The Plaintiffs Annmarie and Anthony Ruscelli rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

36    Plaintiffs Mary L. and Bernard G. Russell, Sr. who reside at Old Route 9W in the Town of Highlands, Village of Highland Falls, County of Orange, State of New York and who own investment property serviced by wells as investment property at 68 Montgomery Road, Fort Montgomery, Town of Highlands, County of Orange, State of New York that currently serve tenants who rent and who rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well that

services the properties. Water samples taken from the well have shown that the water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

37.    Plaintiffs John and Catherine Ryerson are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 108 Firefighters Memorial Drive. The Plaintiffs John and Catherine Ryerson rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

38.    Plaintiff Richard Salva is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and owns property on which he and his family resides at 15 Murphy Road. The Plaintiff Richard Salva relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from his well have shown that his water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water

39.    Plaintiff Elizabeth Sevik is an adult citizen and resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and owns property on which she resides at 8 Locust Avenue. The Plaintiff Elizabeth Sevik relies for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from the well have shown that the water is contaminated with Chloroform. There is no other water supply that could be used or that is available to be used except for bottled water

40.    Plaintiffs Lori and James Sheldon are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York

13

and own property on which they reside at 17 St. Mark's Place. The Plaintiffs Lori and James Sheldon rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE at a concentration of 1.2 ppb.    There is no other water supply that could be used or that is available to be used except for bottled water.

41.    Plaintiffs Anthony and Rachelle Squicciorini are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 10 Hemlock Avenue. The Plaintiffs Anthony and Rachelle Squicciorini rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE.    There is no other water supply that could be used or that is available to be used except for bottled water.

42.    Plaintiffs John M. and Josephine Thibault are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 29 Wyant Avenue. The Plaintiffs John M. and Josephine Thibault rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

43.    Plaintiffs Amy and William Vingoe are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York and own property on which they reside at 7 Torne Road. The Plaintiffs Amy and William Vingoe rely for drinking, bathing, cooking, cleaning and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their

14

well have shown that their water is contaminated with MTBE. There is no other water
supply that could be used or that is available to be used except for bottled water.

44.    Plaintiffs John P. Wort, Jr. and Margaret Wort are adult citizens and
residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State
of New York and own property on which they reside at 21 Drew Road. The Plaintiffs
John and Margaret Wort rely for drinking, bathing, cooking, cleaning and all other
ordinary and domestic purposes on water from a well on the property. Water samples
taken from their well have shown that their water is contaminated with MTBE. There is
no other water supply that could be used or that is available to be used except for bottled
water.

## THE DEFENDANTS
### A.  The Manufacturer Defendants

45.    Plaintiffs make the following allegations contained in paragraphs 45
through 52 upon information and belief. The following defendants in this action are
manufacturers and/or distributors of MTBE and gasoline containing MTBE, and doing
business in the State of New York.

46.    Defendant Sunoco, Inc., is a foreign corporation organized under the laws
of Pennsylvania and authorized to do business in the State of New York with its principal
place of business in Philadelphia, Pennsylvania and its principal executive office located
in Wilmington Delaware, and is doing business in the State of New York

47.    Defendant Mobil Corporation is a foreign corporation organized under the
laws of the state of Texas and authorized or had been authorized to do business in the
state of New York with its principal place of business in Irving, Texas, and did or does
business in New York.

48.    Defendant Exxon Mobil Corporation f/k/a Exxon Corporation is a foreign
corporation organized under the laws of the state of Texas and authorized or had been

15

authorized to do business in the state of New York with its principal place of business in Irving, Texas and did or does business in New York.

49.    Defendant Exxon Mobil Corporation is a foreign corporation organized under the laws of the state of Texas and authorized to do business in the state of New York with its principal place of business in Irving, Texas and did or does business in New York.

50.    Plaintiffs are ignorant of the true names and/or capacities of the Defendants sued herein under the fictitious names DOES 1 through 200, inclusive.

51.    Defendants Sunoco, Inc., Mobil Corporation, Exxon Mobil Corporation f/k/a Exxon Corporation, Exxon Mobil Corporation and DOES 1 through 200, and each of them: (1) manufactured, formulated, distributed, transported, packaged, sold, spilled, and/or released gasoline containing MTBE in the state of New York; (2) were legally responsible for and committed each of the tortious and wrongful acts alleged in the Complaint; and (3) in doing the tortious and wrongful acts alleged in the Complaint, acted in the capacity of aider, abettor, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, controller, alter-ego, licensee, licensor, an/or indemnitor of each of the remaining DOE and named Defendants.

52.    Each of the Defendants named in paragraphs 45 through 49 above, and DOE Defendants 1 through 200, will be collectively referred to as the "Manufacturer Defendants" or "Manufacturers."

### B. The Distributor Defendants

53    Plaintiffs make the following allegations contained in paragraphs 53 through 63 upon information and belief. The following Defendants in this action are distributors of MTBE and/or gasoline containing MTBE, and doing business in the state of New York:

54.    Defendant Sunoco, Inc., is a foreign corporation organized under the laws

16

of Pennsylvania and authorized to do business in the State of New York with its principal place of business in Philadelphia, Pennsylvania and its principal executive office located in Wilmington Delaware, and is doing business in the State of New York.

55.    Defendant Mobil Corporation is a foreign corporation organized under the laws of the State of Texas and authorized or had been authorized to do business in the State of New York with its principal place of business in Irving, Texas, and did or does business in New York.

56.    Defendant Exxon Mobil Corporation f/k/a Exxon Corporation is a foreign corporation organized under the laws of the State of Texas and authorized or had been authorized to do business in the State of New York with its principal place of business in Irving, Texas and did or does business in New York.

57.    Defendant Exxon Mobil Corporation is a foreign corporation organized under the laws of the State of Texas and authorized to do business in the state of New York with its principal place of business in Irving, Texas and did or does business in New York.

58.    Defendant Chestnut Petroleum Distributors is a domestic corporation organized under the laws of the State of New York and authorized to do business in the state of New York with its principal place of business in New Paltz, New York at 536 Main Street and did or does business in New York.

59.    Defendant Sal Jamal is a resident of the state of New York with his principal place of residence at 536 Main Street, New Paltz, and New York and is doing business or has done business in the State of New York.

60.    Plaintiffs are ignorant of the true names and/or capacities of the

17

Defendants sued herein under the fictitious names DOES 201 through 400, inclusive.

61.    Defendants Sunoco, Inc., Mobil Corporation, Exxon Mobil Corporation f/k/a Exxon Corporation, Exxon Mobil Corporation, Chestnut Petroleum Distributors, Sal Jamal and DOES 201 through 400, hereinafter referred to collectively as "Distributor Defendants or Distributors", and each of them: (1) purchased gasoline containing MTBE from one or more of the manufacturer defendants, and then resold the gasoline to one or more of the gasoline station defendants in the State of New York; (2) supplied gasoline containing MTBE to gasoline stations in the town of Highlands, New York and/or other distributors who supplied gasoline containing MTBE to gasoline stations in the town of Highlands, New York; (3) were legally responsible for and committed each of the tortious and wrongful acts alleged in this complaint; and (4) in doing the tortious and wrongful acts alleged in the complaint, acted in the capacity of co-conspirator, aider, abettor, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and named defendants.

62    In addition to engaging in the distributor activities more fully described in paragraph 61 above, DOES 300 through 400 also engaged in the manufacturing acts and activities fully described in paragraph 51 above, which is incorporated in full herein.

63.    Each of the defendants named in paragraphs 53 through 59, and DOE defendants 201 through 400, are collectively referred to as the "distributor defendants."

C. The Gasoline Station Defendants.

64.    Plaintiffs make the following allegations contained in paragraphs 64 through 71 upon information and belief. The following defendants in this action are

18

gasoline station owners and/or operators and purchased, sold and stored gasoline-containing MTBE, and have been and/or are doing business in the State of New York:

65.    Defendant Sunoco (R&M) f/k/a Sun Company, Inc., (R & M), is a foreign corporation organized under the laws of the state of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania and authorized to do business in the State of New York and did or does business in the State of New York and owns and/or operates, purchased, purchases, sold, sells and stores/stored gasoline at its service station located at 805 Route 9W, Town of Highlands, Hamlet of Fort Montgomery, County of Orange, State of New York.

66.    Defendant Chestnut Petroleum Distributors is a domestic corporation organized under the laws of the State of New York and authorized to do business in the State of New York with its principal place of business at 536 Main Street, New Paltz, New York and did or does business in the State of New York and owns and/or operates, purchased, purchases, sold, sells and stores/stored gasoline at its service station located at 1086 Route 9W and 805 Route 9W, Town of Highlands, Hamlet of Fort Montgomery, County of Orange, State of New York.

67.    Defendant Sal Jamal is a resident of the state of New York with his principal place of business at 536 Main Street, New Paltz, New York and did or does business in the State of New York and owns and/or operates, purchased, purchases, sold, sells and stores/stored gasoline at its service station located at 1086 Route 9W and 805 Route 9W, Town of Highlands, Hamlet of Fort Montgomery, County of Orange, State of New York.

68.    Defendant Favre Bros. Land, Inc., is a domestic corporation organized under the laws of the State of New York and authorized to do business in the state of New York with its principal place of business at 24 Drew Road, Town of Highlands, Hamlet of Fort Montgomery, County of Orange, State of New York and did or does business in the State of New York and owns and/or operates, purchased, purchases, sold, sells and

19

stores/stored gasoline at its service station located at 1086 Route 9W Town of Highlands, Hamlet of Fort Montgomery, County of Orange, State of New York

69.    Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names DOES 401 through 600, inclusive.

70.    The defendants named in paragraphs 54 through 57 above, and DOES 401 through 600, and each of them: (1) negligently operated, designed, constructed, owned, repaired, controlled, installed, inspected and/or fabricated gasoline stations, including, but not limited to, gasoline storage, transfer, delivery, and dispensing systems ("gasoline stations"); (2) were legally responsible for and committed each of the tortious and wrongful acts alleged in this complaint; and (3) in doing the tortious and wrongful acts alleged in the complaint, acted in the capacity of co-conspirator, aider, abettor, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and named defendants.

71.    Each of the defendants named in paragraphs 64 through 68, and DOE defendants 401 through 600, are collectively referred to as the "gasoline station defendants."

## BACKGROUND OF MTBE and TBA

72.    Plaintiffs make the following allegations contained in paragraphs 72 through 81 upon information and belief. MTBE is an additive to gasoline and consists not only of methyl tertiary butyl ether, but also the contaminants in commercial grade MTBE as well as the following oxygenates and ethers, including, but not limited to, TAME, DIPE, and ETBE. TBA is present in some gasoline. TBA is variously a gasoline constituent, an impurity in commercial grade MTBE, and a degradation or breakdown product of MTBE (hereinafter collectively all the above shall be referred to as MTBE). The manufacturers of MTBE should have thoroughly tested MTBE to determine its environmental fate and potential human health impacts before they sold MTBE and should

20

have taken precautions necessary to assure that MTBE was properly stored and instituted all necessary measures to contain and promptly abate the inevitable spills and leaks. Nonetheless, the defendants, and each of them, failed to adequately test, store, warn, or control MTBE and failed to abate groundwater contamination caused by MTBE.

73.     The widespread problem of leaking gasoline systems was well known to the manufacturer defendants prior to the introduction of MTBE. At least as early as the mid-1960's, the MTBE manufacturers and distributors knew, or reasonably should have known, that gasoline systems suffer widespread leaks and failures, and release gasoline products into the environment, including into groundwater. For example, by 1969 the API had established an underground leak prevention program. By the 1970s, the adverse environmental effects of leaking gasoline systems were well recognized, both in the petroleum industry and elsewhere. As early as 1982, even petroleum industry experts estimated that between 75,000 and 100,000 tanks were leaking, and up to 350,000 additional tanks would be leaking by 1987.

74.     Before introducing MTBE into the gasoline market, the MTBE manufacturers and refiners knew, or reasonably should have known, that MTBE released into the environment would mix easily with groundwater, move great distances, and resist biodegradation or bioremediation. These defendants knew, or they reasonably should have known, that the gasoline distribution and retail systems contained old, deteriorated, or leaking gasoline systems. They knew, or they reasonably should have known, that gasoline stations, including those in the Town of Highlands, commonly lacked adequate storage facilities for MTBE-containing gasoline.

75.     By 1986, the MTBE manufacturers and distributors knew or should have known that MTBE would contaminate groundwater. For example, proceedings of a 1986 conference of the American Petroleum Institute (API) included a scientific paper by P. Garrett (Maine Department of Environmental Protection) and J. Lowry (University of Maine) titled "MTBE as a Ground Water Contaminant." The API is an oil industry trade

21

association, and is the primary U.S. national trade association serving the petroleum industry. This paper concluded that MTBE's solubility is substantially greater than the other components of gasoline; the migration of MTBE in groundwater is more extensive than gasoline components without MTBE; and that MTBE causes higher levels of contamination for all gasoline components. The paper stated: [W] e infer that a plume of MTBE in ground water should be more extensive than the plume of other gasoline components. There should be areas on the outer fringes of the total plume where MTBE is the only detectable contaminant. The MTBE plume will appear as a "halo" around the dissolved gasoline plume, which in turn appears as a halo around the free product plume. The greater solubility of MTBE in water, combined with the near 100% solubility of all gasoline components in MTBE may increase the sum total of all dissolved gasoline components in groundwater. If this is so, then spills, which contain MTBE, should result in higher concentrations of total dissolved hydrocarbons in ground water than spills with no MTBE.

76.    A later article by P. Garrett, M. Moreau, and J. Lowry concluded:

1)    MTBE is a more soluble and more rapidly spreading ground water contaminant than other components of gasoline,

2)    Its presence in spilled gasoline increases dissolved concentrations of gasoline in ground water in the immediate vicinity of the spill to about an order of magnitude above typical values for spills in which there is no MTBE, and

3)    It is more difficult to remove from contaminated water than the other components of gasoline.

77.    Sunoco, Inc. (formerly known as Sun Oil Company) was at all times relevant herein, a member of the American Petroleum Institute ("API"). As a participant in API meetings and proceedings, Sunoco learned by 1986 that MTBE had caused extensive groundwater contamination in the Northeastern United States.

78.    Exxon was also, at all times relevant herein, a member of the API and several of its key environmental employees served on and chaired multiple API

22

committees. As a participant in API meetings and proceedings, Exxon learned by 1986 that MTBE had caused extensive groundwater contamination in the Northeastern United States.

79.    Sunoco, Inc. and Exxon are both some of the original members of an industry group known as the "MTBE Committee." In 1986, the United States Environmental Protection Agency Test Rules Development Branch notified industry representatives in an MTBE focus group presentation that industry should provide the following information pursuant to the provisions of the Toxic Substances Control Act: "TRDB needs more information on the presence and persistence of MTBE in groundwater."

80.    Sunoco, Inc., Exxon and other members of the MTBE Committee responded to this request for information by reviewing, drafting and approving a written document submitted to the EPA under the signature of their agent and representative, George Dominguez, the executive director of the MTBE Committee. On February 27, 1987, Sunoco, Inc. and other members of the MTBE Committee represented that: there is no evidence that MTBE poses any significant risk of harm to health or the environment, that human exposure of MTBE and release of MTBE to the environment is negligible, that sufficient data exists to reasonably determine or predict that manufacture, processing, distribution, use and disposal of MTBE will not have an adverse effect on health or the environment, and that testing is therefore not needed to develop such data. Furthermore, issuance of a test rule requiring long term chronic testing will have a significant adverse environmental and economic impact.

81.    At the time the MTBE Committee made this representation, Sunoco, Inc. and Exxon knew that there was data to support the above assertions and had substantial credible information in their files that the statements concerning MTBE's capacity to contaminate groundwater were false.

## NATURE OF THE CASE

23

82.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs "1" through "81" as though set forth fully here at length. Plaintiffs make these allegations upon information and belief.

83.    One or more plumes of methyl tertiary butyl ether (MTBE), generated by the reckless, wanton and negligent acts of the Defendants, who owed a duty to the Plaintiffs to keep MTBE-gasoline in safe containers, as well as a duty to warn of the dangers of MTBE, has contaminated each of the Plaintiffs wells located on their respective real properties in which each and every plaintiff named herein either owns or has an interest in said properties located in the Town of Highlands, in the Hamlet of Fort Montgomery, County of Orange, State of New York (the Town).

84.    The water supplied to each Plaintiffs' property from their respective wells (except for the Town of Highlands which has a claim for a future interest in a well in the Town, and Plaintiff Drew Road Association and its members who have two wells, one contaminated, which members had used, and another that has not shown signs of contamination thus far), is the only source of water, for drinking, bathing, washing clothes, dishes, household chores, water for indoor plants, outdoor gardening and in some cases filling swimming pools and drinking by and bathing of pets.

85.    At extremely low concentrations (less than one part per billion "1 ppb" in one industry sponsored study), MTBE can change the taste and odor or groundwater into a foul smelling liquid with a chemical odor and taste which renders the water unfit for human consumption. MTBE is known to cause cancer in animals and is linked to a wide variety of threats to human health.

86.    MTBE is an additive to gasoline sold in various parts of New York State including the Town. MTBE does not occur naturally, but is produced in very large amounts from isobutylene, a by product of the gasoline refining process which in the past was a waste product that had to be disposed of, but now is used profitably by the Defendants. Various chemical companies also produce MTBE from tertiary-butyl

24

alcohol. MTBE is a member of a class of chemical compounds, ethers, whose unique properties include enhanced solubility in water and chemical attraction to water molecules. MTBE constitutes approximately eleven percent (11%) by volume of the finished products ultimately sold at gasoline pumps.

87.    MTBE reaches the environment through leaks and spills in gasoline storage, transfer, delivery and dispensing systems (gasoline systems). Once released to the environment from gasoline systems, MTBE has a unique capacity to cause extensive environmental contamination and a corresponding threat to the health of the persons, certain plants, animals, reptiles and amphibious species that come into contact with it. The chemical properties of MTBE enable it to move readily through soil into groundwater, where it is quite persistent.

88.    Unlike gasoline, which does not mix with water, MTBE mixes so well with water that it spreads its toxic plumes faster and farther than other chemical components contained in gasoline. It does not attach readily to soil particles and is therefore not readily susceptible to natural biodegradation. In technical terms, MTBE has a low octanol water partition coefficient and high solubility in water, particularly as compared to the other major constituents of gasoline. Moreover, MTBE exacerbates pollution by other constituents of gasoline.

89.    The Defendants in this action are the designers, manufacturers, formulators, distributors, and retailers of the gasoline containing MTBE and the owners of the properties where MTBE was sold in gasoline and where the leaks from the underground storage tanks occurred which caused the contamination of the Plaintiffs wells and only source of water (with the exception of the Town of Highlands and Drew Road Association). Defendants have contaminated Plaintiffs wells forever thus destroying their only water supply (except the Town of Highlands and Drew Road Association) by placing gasoline containing MTBE into the underground storage tanks at the Defendants gasoline stations located in the Town which leaked from these

underground storage tanks, piping and dispensing systems (hereinafter collectively referred to as "UST systems").

90.    Defendants marketed gasoline-containing MTBE in New York, when they knew (or reasonably should have known) that MTBE would reach groundwater, pollute drinking water supplies, and threaten the public health. In particular, Defendants have known for at least three decades that UST systems leak and cause extensive contamination that cannot be removed from ground water or well water.

91.    Defendants failed to test MTBE adequately for environmental fate, human health risks, contamination potential, failed to take adequate steps to assure that MTBE would not reach groundwater, pollute the environment, and ruin drinking water supplies, and failed to warn purchasers, regulatory officials, the public, and plaintiffs of the dangers of MTBE.

92.    In or around 1980, manufacturing Defendant's Sunoco, Inc., Mobil Corporation, Exxon Mobil Corporation f/k/a Exxon Corporation and Exxon Mobil Corporation began using MTBE as a gasoline additive to boost octane in New York. Despite the Defendants knowledge of the dangerous characteristics of MTBE and its propensity to contaminate groundwater, these Defendants formed joint task forces and committees, and in doing so, misrepresented to the government and the public the true characteristics of MTBE in order to pave the way for MTBE to become one of the most widely used products in the United States.

93.    The problems of leaking gasoline systems have been well documented for decades. Historically, the industry took few, if any, measures to protect the public and the environment against leaks from the UST systems. By some estimates, fifty percent of these UST systems leak.

94.    By 1988, the federal government instituted a mandatory program to upgrade and replace these systems with leak detection systems and double walled fiberglass tanks. New York State also required gasoline stations to install similar

containment systems. As a result of the introduction of MTBE-laden gasoline and the subsequent increase in the concentrations and distribution of the gasoline additive, however, MTBE has become the second most widespread organic pollutant in the groundwater throughout the State of New York.

95.     The containments and UST systems in the Defendants' gasoline stations in the Town were wholly inadequate and unsuitable for the location of these gasoline stations and resulted in multiple leaks and spill that have caused the contamination complained of herein by Plaintiffs.

96.     MTBE has caused a statistically significant increase in the incidence of cancer in scientific studies conducted on at least two species of laboratory animals by multiple routes of exposure. The independent scientific community generally classifies any chemical with these characteristics as probable human carcinogen. In these studies, exposure to MTBE was associated with leukemia, lymphomas, testicular tumors, kidney cancer and liver cancer. Two metabolic by-products of MTBE (formaldehyde and tertiary butyl alcohol "TBA") have also caused cancer in scientific experiments.

97.     The manufacturer Defendants have promoted the use of MTBE for its purported environmental benefits and knew or should have known of the terrible downside of the proliferating use of the compound: widespread pollution of groundwater, contamination of drinking water and threats to public health.

98.     Despite knowing that MTBE pollution was inevitable, Defendants chose not to warn customers, retailers, or owners of drinking water wells, including Plaintiffs, until it was too late. As MTBE production and sales soared to record heights, Defendants failed to warn that unless special precautions were taken, and prompt efforts were made to prevent, detect and clean up spills and leaks, more and more MTBE would be released into the environment and cause long term groundwater and well water contamination.

99.     Defendants further exacerbated the situation by indiscriminately selling gasoline containing MTBE to gas stations without appropriate warnings and precautions:

27

(1) knowing that a large percentage of those gasoline stations would store gasoline containing MTBE in leaking UST systems; (2) knowing that certain gasoline stations possessed antiquated, rusted, and compromised gasoline systems which had not been upgraded or replaced; (3) knowing that most gasoline station owners/operators and environmental consultants would not test samples at release sites for the presence of MTBE (a necessary part of any remedial program) unless warnings were given; and (4) in the case of the particular location of the Defendants' gasoline stations in the Town, due to the contours and makeup of the area where the UST systems were placed, the Defendants knew or should have known that the UST systems would ultimately leak.

100.    The MTBE chemical was discharged from UST systems located at gasoline stations at 805 Route 9W in the Town said property identified in the records of the Town and the Orange County Clerk, State of New York as Section 16, Lot 2, Block 1.2 and at 1086 Route 9W in the Town said property identified in the records of the Town and the Orange County Clerk, State of New York as Section 12, Lot 1, Block 2 and were owned and/or operated and/or controlled and/or supplied with MTBE laden gasoline by the Defendants in wanton, reckless and negligent disregard for the health and safety of the Plaintiffs.

101.    Profit was the motivating factor behind the Defendants wanton, reckless and negligent use of MTBE in gasoline sold at the above-mentioned locations. Defendants had a choice to use a cleaner but much more expensive additive other than MTBE to achieve the same goals of boosting octane and cleaner burning fuel, but chose not to use that additive because it was cheaper to use the MTBE which is a by-product of the refining waste.

102.    Plaintiffs seek a mandatory injunction to compel Defendants, jointly and severally, to pay for Plaintiffs' environmental and other consultants or a court supervised program of continuous and frequent sampling and analysis of Plaintiffs' respective well water to test and monitor the levels of MTBE and other contaminants that are the by-

product of gasoline that has contaminated the Plaintiffs wells as a result of the wanton, reckless and negligent acts resulting in leaks from the Defendants UST systems from their gasoline stations in the Town and also to provide at Defendants expense jointly and severally bottled water until a replacement water system is installed to provide each Plaintiff with water that is uncontaminated by MTBE and will not be contaminated by any means in the future. This would require an independent water source other than well water in the Town and the building of a municipal water and sewer system that draws clean and safe uncontaminated water suitable for all the needs of the Plaintiffs that they once enjoyed as a property right and no longer enjoy.

103.    Plaintiffs also seek compensatory damages to recover for the capping of their wells, the loss in value of their homes and properties, lost income from investment and commercial properties and businesses, temporary replacement water, stigma damages, personal injury damages for and including but not limited to reckless and negligent infliction of emotional distress, to be protected from any claims and future claims brought against Plaintiffs from guests of their homes, renters, customers of businesses, lessors or any others who have been exposed to the MTBE contaminated water on Plaintiffs' respective properties and for future medical expenses for continued testing and diagnosis of symptoms and ailments to determine if such ailments or symptoms are linked to MTBE exposure from Plaintiffs well water that was caused by the reckless, negligent and wanton acts of the Defendants and all other costs associated thereto.

104.    Finally, Plaintiffs seek punitive damages in an amount great enough to punish these Defendants proportional to the profits they reap by their use of poisonous MTBE as opposed to the more costly alternative products available to them and to deter future use of MTBE in gasoline that Defendants store in their UST systems located on their respective properties which is sold to the public. The harm suffered by Plaintiffs was and is as a result of the Defendants' acts and omissions, and such acts and omissions

were actuated by actual malice or accompanied by a wanton or willful disregard for the safety of Plaintiffs who foreseeably were harmed by the exposure to and contamination of their property by MTBE. Defendants engaged in intentional wrongdoing motivated by greed and profit by allowing MTBE to be placed into the Defendants UST systems knowing they would leak gasoline containing high levels of MTBE into the ground, and groundwater and eventually found its way into Plaintiffs' wells and real property that cannot be removed from the well and where scientific evidence has shown could take decades to cleans itself out. The Defendants then failed to immediately notify the Plaintiffs of the dangers and potential dangers and to remediate the contaminated wells and real property and still have not remediated the Plaintiffs' wells or real property. These Defendants permitted the MTBE to spread to Plaintiffs real property and wells without warning and without concern for the health and safety of Plaintiffs in order to avoid the heavy burden and costs to themselves and or their shareholders. Defendants placed gasoline containing MTBE into their UST systems knowing that the chemical possessed special dangers and once it reaches water, there is no way to remediate it therefrom and did indeed deliberately act or negligently act or failed to act with knowledge of a high degree of probability of harm to Plaintiffs and with reckless, wanton and negligent disregard of the consequences of such actions or omissions that Defendants did owe a duty to Plaintiffs to safeguard and inform.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (Strict Liability Against All Defendants)

105.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "104" above, and by this reference incorporates them as though set forth in full.

106.    Defendants Sunoco, Inc., Mobil Corporation, Exxon Mobil Corporation f/k/a Exxon Corporation, Exxon Mobil Corporation, Chestnut Petroleum Distributors, Sal Jamal, and Does 1-200 (hereinafter the "manufacturer defendants"); Defendants Sunoco,

Inc., Mobil Corporation, Exxon Mobil Corporation f/k/a Exxon Corporation, Exxon Mobil Corporation, Chestnut Petroleum Distributors, Sal Jamal and Does 201-400 (hereinafter the "distributor defendants"); and Defendants Sun Company, Inc., (R & M) Chestnut Petroleum Distributors, Sal Jamal Favre Bros. Land, Inc and Does 401-600 (hereinafter "gasoline station defendants"), and each of them, designed, manufactured, formulated, packaged, distributed and/or sold gasoline containing MTBE.

107.    Defendants, and each of them, represented, asserted, claimed and warranted that MTBE could be used in a manner which would not cause injury or damage.

108.    Defendants, manufacturers and distributors, and each of them, manufactured, compounded, packaged, designed, distributed, tested, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, and sold MTBE and its constituents, which was intended by defendants, and each of them, to be used as a gasoline additive.

109.    Defendants, and each of them, knew that said product was to be purchased and used without inspection for defects.

110.    MTBE is a defective product because, among other things:

    (a)    It causes extensive groundwater contamination, even when used in its foreseeable and intended manner;

    (b)    Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for use.

    (c)    MTBE poses significant threats to human health;

    (d)    Defendants failed to provide adequate warnings of the known and foreseeable risks of MTBE; and

    (e)    Defendants failed to conduct scientific studies to evaluate the environmental fate and potential human health effects of MTBE.

111.    MTBE was used in a manner in which it was foreseeably intended to be used and as a proximate result of the defects previously described, MTBE proximately caused Plaintiffs to sustain the injuries and damages set forth in this complaint.

31

112.    As a direct and proximate result of the acts and omissions of the defendants alleged herein, Plaintiffs' wells in the Town of Highlands, New York, were contaminated with MTBE and Plaintiffs have sustained property damage and been forced to secure alternative water supplies and at various times to use water which was unfit for human consumption, unsuitable for use in cooking, cleaning, bathing, and other normal household uses. Plaintiffs also seek to recover the past, present and future cost of installing, operating, and maintaining filtration facilities to remove MTBE from their water supply and to abate the MTBE plume.

113.    As a further direct and proximate result of the acts and omissions of the defendants alleged herein, Plaintiffs have suffered emotional distress and will sustain substantially increased expenses, damages and loss of the use of water and loss of appropriative water rights and diminution in the value and marketability of Plaintiffs' property, all to Plaintiffs' damage in an amount within the jurisdiction of this court in excess of one million dollars ($1,000,000.00) as to each Plaintiff compensatory damages and punitive damages in an amount great enough to punish these defendants. Plaintiffs are also entitled to recover costs incurred in prosecuting this action, attorney's fees, and prejudgment interest to the full extent permitted by law.

114.    Defendants Sunoco, Inc., Mobil Corporation, Exxon Mobil Corporation f/k/a Exxon Corporation and Exxon Mobil Corporation, and DOES 50 through 100 knew by the mid-1980s that MTBE had contaminated numerous drinking water wells and caused the water to have an unacceptable and offensive taste and odor and knew that it was substantially certain that their alleged acts and omissions described above would threaten public health and cause extensive contamination of drinking water supplies and property damage. Notwithstanding this knowledge, said Defendants deliberately failed to take any action needed to prevent the inevitable widespread contamination associated with the use of MTBE in gasoline, including providing some warning so that preventive and remedial action could be taken. Defendants committed each of the above-described acts

32

and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with conscious disregard have the health and safety of Plaintiffs and others.

115.    This conduct is reprehensible, despicable, and was performed with the intent to induce reliance by a class of persons including their customers, the public, regulatory agencies and other interested parties such as private well owners on false and misleading representations, and to promote sales of MTBE in conscious disregard of the known risks of injury to health and property. Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon Plaintiffs. Therefore, Plaintiffs request an award of exemplary damages in an amount sufficient to punish Defendants Sunoco, Inc., Mobil Corporation, Exxon Mobil Corporation f/k/a Exxon Corporation and Exxon Mobil Corporation, and DOES 50 through 100. After the completion of additional investigation and discovery, Plaintiff may seek leave of court to amend this complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Negligence - Against All Defendants)

116.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "115", inclusive, of this Complaint and incorporates them herein by reference.

117.    Defendants had a duty to use due care in the design, manufacture, formulation, handling, control, disposal, sale, testing, labeling, use, and instructions for use of MTBE and gasoline systems.

118.    The Defendants named herein so negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or the lack thereof), tested (or the lack thereof), released, spilled, and/or sold MTBE, and so negligently, carelessly and recklessly dispensed, spilled, and released gasoline containing MTBE and so negligently, carelessly, and recklessly dispensed MTBE into gasoline

33

systems, that they breached their duties and directly and proximately caused MTBE to contaminate Plaintiffs' wells, resulting in the compensatory and punitive damages alleged in this complaint.

119.    Defendants, and each of them, among other things, negligently failed to: (1) prevent leaks of MTBE through the use of appropriate technology; (2) install and maintain gasoline systems that prevented leaks and facilitated prompt detection and containment of any leaks; (3) monitor and discover leaks as soon as possible; (4) warn those who may be injured as a result of the leak; and (5) stop leak(s) and clean-up MTBE spill(s) as soon as reasonably possible.

120.    The Defendant manufacturers had actual control over the gasoline station defendants through a variety of means, including written agreements, inspection rights, prescribing certain procedures and operating practices, sale of branded goods, and training.  Therefore, the Defendant manufacturers had actual control over the gasoline station defendants with leaking gasoline systems and/or were vicariously liable for the acts and conduct of the gasoline station defendants.

121.    The manufacturer defendants also undertook tank system testing, tank integrity testing, inventory reconciliation and testing thereby affirmatively undertaking the duty to prevent tank leaks, but negligently failing to properly discharge these duties.

122.    The manufacturer and distributor defendants knew, or should have known, that certain of the gasoline station defendants had leaking gasoline systems, but nonetheless negligently entrusted MTBE gas to these gasoline station defendants knowing that MTBE would leak into the soil and contaminate groundwater and well water.

123.    Defendants' conduct as alleged in this Complaint constitutes a violation of the MTBE Public Health and Environmental Protection Act of 1997 and any and all similar New York Statutes in existence or which had been in existence.

124.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs have incurred, is incurring, and will continue to incur damages,

expenses and losses alleged in this complaint, Paragraphs 102 through 104, incorporated

herein by reference all to Plaintiffs' compensatory damage in an amount within the

jurisdiction of this court in excess of one million dollars ($1,000,000.00) as to each

Plaintiff and punitive damages as to each Plaintiff in an amount sufficient enough to

punish Defendants.  Plaintiffs are also entitled to recover costs incurred in prosecuting

this action, attorney's fees, and prejudgment interest to the full extent permitted by law.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Trespass Against All Defendants)

125.  Plaintiffs repeat and re-allege each and every allegation contained in

paragraphs "1" through "124", inclusive of this Complaint, and incorporates them herein

by reference.

126.     Plaintiffs are the owners and/or actual possessors of property, easements,

a drinking water well, the right to appropriate and use groundwater, and water rights.

127.     Defendants, their agents and employees, knew, or in the exercise of

reasonable care should have known, that MTBE is extremely hazardous to groundwater.

128     Defendants negligently, recklessly and/or intentionally failed to properly

control, handle, store, contain, and use MTBE and/or clean-up spills and leaks of MTBE

that they directly and proximately caused MTBE to contaminate Plaintiffs' wells as

follows:

(a)     The defendants participated in the use, storage, and release of
MTBE by regulating, monitoring, and controlling the storage,
disposal, and testing of tanks, gasoline systems, and gasoline
stations.

(b)     Defendant manufacturers and distributors negligently sold MTBE
to the gasoline station defendants knowing that there was a
substantial danger that underground gasoline systems and gasoline
dispensing facilities were leaking, without taking appropriate
precautions to assure that the gasoline containing MTBE they
dispensed into gasoline systems would not spill or escape into the
environment.

(c)     Defendant manufacturers, distributors, and DOES 350 through
400, inclusive, negligently overfilled gasoline systems with

35

gasoline containing MTBE and/or spilled it at gasoline stations near Plaintiff's wells.

(d)    Defendants negligently tested (or the lack thereof) MTBE to determine its environmental fate and potential human health impact.

(e)    When Defendants learned, or should have learned, that MTBE was persistent and a widespread source of groundwater contamination, defendants failed to warn the appropriate entities and individuals of known risks, spills, and/or leaks or failed to undertake appropriate action to reduce, remediate or abate MTBE groundwater and well water contamination.

129.    The MTBE contamination of Plaintiffs' wells has varied and will vary over time and requires investigation, remediation, abatement, and/or treatment. The contamination has resulted in the reduction in the value of Plaintiffs' property and diminished its marketability. Plaintiffs have incurred water treatment costs and secured replacement water supplies, have sustained and will sustain, the damages alleged in this complaint, Paragraphs 102 through 104, incorporated herein by reference, all to Plaintiffs' compensatory damage in an amount within the jurisdiction of this court in excess of one million dollars ($1,000,000.00) as to each Plaintiff and punitive damages as to each Plaintiff in an amount sufficient enough to punish Defendants. Plaintiffs are also entitled to recover costs incurred in prosecuting this action, attorney's fees, and prejudgment interest to the full extent permitted by law.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Nuisance Against All Defendants)

130.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "129" of this Complaint and incorporates them herein by reference.

131.    The negligent, reckless, intentional and ultra hazardous activity of the Defendants, and each of them, alleged herein has resulted in the contamination of Plaintiffs' wells and constitutes a nuisance as alleged herein.

36

132.    Plaintiffs' use and enjoyment of its wells, water, water rights and property value are adversely affected by the nuisance.

133.    As a direct and proximate result of the nuisance, Plaintiffs have incurred, are incurring, and will continue to incur damages, expenses and losses alleged in this Complaint, Paragraphs 102 through 104, incorporated herein by reference, all to Plaintiffs' compensatory damage in an amount within the jurisdiction of this court in excess of one million dollars ($1,000,000.00) as to each Plaintiff and punitive damages as to each Plaintiff in an amount sufficient enough to punish Defendants.    Plaintiffs are also entitled to recover costs incurred in prosecuting this action, attorney's fees, and prejudgment interest to the full extent permitted by law.

<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>
**(Intentional Interference With Right to Appropriate Against All Defendants)**

134.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "133" of this Complaint and incorporates them herein by reference.

135.    In the State of New York, the right to appropriate water from the ground or other water sources constitutes an interest in real property.    The negligent, reckless, intentional and ultra hazardous activity of the defendants, and each of them, alleged herein has invaded Plaintiffs' usufructuary right to utilize wells and draw water from the local aquifer.

136.    As a direct and proximate result of the interference with Plaintiffs' right to appropriate water, Plaintiffs have incurred, is incurring, and will continue to incur damages, expenses and losses alleged in this complaint, Paragraphs 102 through 104, incorporated herein by reference, all to Plaintiffs' compensatory damage in an amount within the jurisdiction of this court in excess of one million dollars ($1,000,000.00) as to each Plaintiff and punitive damages as to each Plaintiff in an amount sufficient enough to

punish Defendants. Plaintiffs are also entitled to recover costs incurred in prosecuting this action, attorney's fees, and prejudgment interest to the full extent permitted by law.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Declaratory Relief Against All Defendants)

137.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "136", inclusive, of this Complaint and incorporates them herein by reference.

138.     Defendants knew, or should have known, that if MTBE was used in a foreseeable and intended manner that MTBE was dangerous and created an unreasonable and excessive risk of harm to human health and the environment.

139.     Defendants intentionally, willfully, deliberately and/or negligently failed to properly design, manufacture, distribute, design, control, test, and/or sell MTBE and/or gasoline systems and warn users of the substantial and unreasonable threats to human health and safety and the environment which results from the foreseeable and intended use and storage of MTBE.

140.     Plaintiffs must take costly remedial action to remove MTBE contamination and secure alternative water supplies, which will result in substantial costs, expenses and damages within the jurisdiction of this court.

141.     Defendants, and each of them, have failed to reimburse Plaintiffs for its remediation and clean-up costs and deny any responsibility or liability for these damages and expenses Plaintiffs will incur in the future.

142.     In order to resolve this controversy, Plaintiffs request an order declaring that defendants are liable for all costs, expenses, losses, and/or damages sustained by Plaintiffs as a proximate result of the defendants' conduct alleged herein.

### AS AND FOR A SEVENTH CAUSE OF ACTION
(New York General Business Law § 349) (Unfair Competition)
(Against the Manufacturer Defendants Only)

38

143.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs "1" through "142" of this Complaint and incorporates them herein by reference.

144.    The manufacturer defendants' conduct described above constituted unlawful, unfair and fraudulent business practices, and unfair, deceptive, untrue and/or misleading advertising in violation of New York General Business Law § 349.

145.    New York General Business Law § 349 allows "any person who has been injured by reason of a violation of this section to bring any action" to recover damages.

146.    New York General Business Law § 349 further provides that the Court may "increase the award of damages to an amount not to exceed three times the actual damages."

147.    By committing the acts alleged in this complaint, the manufacturer defendants have engaged, and continue to engage, in unlawful, unfair or fraudulent business practices within the meaning of New York General Business Law §349.

148.    The manufacturer defendants have been in violation, and continue to violate, New York's General Business Law §349 by conducting their business falsely representing MTBE as environmentally safe and by acting and/or failing to act as described in this complaint. Beginning at an exact day unknown to Plaintiff, the manufacturer defendants have committed unlawful, deceptive, unfair or fraudulent acts as defined by New York General Business Law §349, by engaging in the acts or omissions mentioned in the complaint.

149.    Defendants' materially deceptive and misleading conduct as alleged in this complaint proximately caused injury to the Plaintiffs, including loss of use and enjoyment of wells and property, the need to obtain a source of uncontaminated water, and other significant damages to Plaintiffs alleged herein as well as to the environment.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (For Violation of Article 12 of the Navigation Law—Strict Liability)
### (Against All Defendants)

39

150. Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs "1" through "150" of this Complaint and incorporates them herein by reference.

151 Navigation Law §181 provides that any person who has discharged petroleum of any kind and in any form, is strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained.

152. In accordance with Navigation Law § 181, Defendants are liable for all damages to Plaintiffs' person and property caused by the leakage, escape, release and/or discharge of petroleum and/or its related products, specifically MTBE, by Defendants.

153. As such, Defendants are strictly liable for damages caused to Plaintiffs, pursuant to the Navigation Law.

154. Accordingly, Plaintiffs are entitled to recover damages on the eighth cause of action for violation of the Navigation Law on the basis of strict liability.

### AS AND FOR A NINTH CAUSE OF ACTION
#### (For Violation of Article 12 of the Navigation Law—Negligence)
#### (Against All Defendants)

155. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "154" of this Complaint and incorporates them herein by reference.

156. Defendants knew or should have known that petroleum and its related products, specifically MTBE, would escape or be released from Defendants' properties.

157. Defendants had a duty of care to Plaintiffs with regard to the leakage, escape, discharge and/or release of petroleum and related products, specifically MTBE.

158. Defendants acted unreasonably and negligently in failing to prevent the leakage, escape, discharge and/or release of petroleum and related products, specifically MTBE.

40

159.     Defendants failed to take reasonable precautions to prevent the leakage, escape, discharge and/or release of petroleum and related products.

160.     In accordance with Navigation Law § 181, Defendants are liable for all damages to Plaintiffs' person and property caused by the leakage, escape, release and/or discharge of petroleum and/or its related products by Defendants.

161.     As a result of Defendants' negligence, Defendants are liable for all damages caused to Plaintiffs as a result of the leakage, escape, discharge and/or release of petroleum and related products.

162.     Accordingly, Plaintiffs are entitled to recover for damages on the ninth cause of action for violation of the Navigation Law on the basis of Defendants' negligence.

### AS AND FOR A TENTH CAUSE OF ACTION
**(For Violation of Article 12 of the Navigation Law—Negligence)**
**(Against All Defendants)**

163.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "162" of this Complaint and incorporates them herein by reference.

164.     Defendants by their acts and omissions, or the acts and omissions of their agents or employees, have unreasonably and substantially interfered with Plaintiffs' use of their property, including the groundwater and atmosphere of Plaintiffs' property.

165.     As a result of this nuisance, Defendants are liable for damages to Plaintiffs' person and property.

WHEREFORE, Plaintiff requests judgment against defendants, and each of them, for:

1.     Compensatory damages as to the first cause of action in as to each Plaintiff in an amount in excess of one million dollars ($1,000,000.00);

41

2.    Exemplary damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts as to the first cause of action as to each Plaintiff;

3.    Compensatory damages as to the second cause of action in the amount in excess of one million dollars ($1,000,000.00) as to each Plaintiff;

4.    Exemplary damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts as to the second cause of action as to each Plaintiff;

5.    Compensatory damages as to the third cause of action in excess of one million dollars ($1,000,000.00) as to each Plaintiff;

6.    Exemplary damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts as to the third cause of action as to each Plaintiff;

7.    Compensatory damages as to the fourth cause of action in excess of one million dollars ($1,000,000.00) as to each Plaintiff;

8.    Exemplary damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts as to the fourth cause of action as to each Plaintiff;

9.    Compensatory damages as to the fifth cause of action in excess of one million dollars ($1,000,000.00) as to each Plaintiff;

10.    Exemplary damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts as to the fifth cause of action as to each Plaintiff;

11.    As to the sixth cause of action Plaintiffs request a declaration that defendants are liable for all costs, expenses, losses, and/or damages sustained by plaintiffs as a proximate results of the defendants conduct;

42

12. Exemplary damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts as to the sixth cause of action as to each Plaintiff;

13. Compensatory damages as to the seventh cause of action in excess of one million dollars ($1,000,000.00) as to each Plaintiff;

14. Exemplary damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts as to the seventh cause of action as to each Plaintiff;

15. Compensatory damages as to the eighth cause of action in excess of one million dollars ($1,000,000.00) or the maximum amount permissible by law, as to each Plaintiff;

16. Exemplary damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts as to the eighth cause of action or the maximum amount permissible by law, as to each Plaintiff;

17. Compensatory damages as to the ninth cause of action in excess of one million dollars ($1,000,000.00) or the maximum amount permissible by law, as to each Plaintiff;

18. Exemplary damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts as to the ninth cause of action or the maximum amount permissible by law, as to each Plaintiff;

19. Compensatory damages as to the tenth cause of action in excess of one million dollars ($1,000,000.00) or the maximum amount permissible by law, as to each Plaintiff;

20. Exemplary damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts as to the tenth cause of action or the maximum amount permissible by law, as to each Plaintiff;

21.    For an order (1) declaring that defendants are liable for the full cost of all remedial and other actions necessary to abate MTBE that contaminates or threatens Plaintiffs' wells, and (2) ordering that defendants continue to pay and conduct testing and monitoring of the Plaintiffs' wells using Plaintiff's consultants and to provide bottled water until a new clean uncontaminated source of water is provided through a municipal water and sewer system;

22.    For the costs incurred herein in prosecuting this action, and prejudgment interest to the full extent permitted by law.

23.    Grant Plaintiffs such other and further relief as may be deemed necessary, just and proper by this Court.

Dated: White Plains, New York
       October 24, 2003

                                        THE SARCONE LAW FIRM, PLLC

                                        By: _____
                                            JOHN A. SARCONE III
                                            Attorneys for Plaintiff
                                            222 Bloomingdale Road, Suite 302
                                            White Plains, New York 10605-1511
                                            (914) 686-8200

DUANE C. MILLER
MILLER& SAWYER
(TRIAL COUNSEL TO THE SARCONE LAW FIRM)
1651 RESPONSE ROAD, 2ND FLOOR
SACRAMENTO, CA 95815-5253
Phone: (916)-927-8600
Attorneys for Plaintiffs