

Law Office of Peter D. Hoffman, PC
Peter D. Hoffman, Esq. (PH-8306)
200 Katonah Avenue
Village Commons East, 2d Floor
Katonah, NY 10536
(914) 232-2242    Phone
(914) 232-2245    Facsimile

FILED

NOV 17 2003

USDC WP SDNY

## UNITES STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
### WHITE PLAINS, NY

| | |
|---|---|
| Robert Basso, M and R Market, Keith Bogardus, Sandra Bogardus, Ronald Buchholz, Joan Buchholz, Eric Buchholz, Alexander Buchholz, Dylan Buchholz, Stacy Camacho, Elizabeth Guadalupe, Louis Guadalupe, Chris DeSpirito, Tracie DeSpirito, William DeSpirito, Denise Linderman, James Linderman, John Quattrocchi, Ann Quattrocchi, John T. Quattrocchi, Damon Quattrocchi, Elaina Quattrocchi, Carin Savage, Cheryl Shrieve, Michael Shrieve, Richard Shrieve and Derrike Shrieve, | DOCKET NO. 03 CIV. 9050 The Hon.                    ,USDJ |
| Plaintiffs, | CIVIL COMPLAINT WITH JURY DEMAND |
| against, | |
| SUNOCO, INC., SUNOCO (R&M) f/k/a SUN COMPANY, INC. (R&M), MOBIL CORPORATION; and EXXON MOBIL CORPORATION f/k/a EXXON CORPORATION, | |
| Defendants. | |

Plaintiffs, by their attorney Peter D. Hoffman, Esq., Law Office of Peter D. Hoffman, PC, hereby make the following complaint against defendants.

## I.    STATEMENT OF THE CASE

1.    This is a diversity action seeking money damages and declaratory and equitable

relief for personal injury and property damage. The claims arise from defendants'
manufacture and distribution of gasoline containing Methyl Tertiary Butyl Ether (MTBE)
and from defendants' contamination of plaintiffs' wells and property located in Orange
County, New York, Town Of Highlands, Hamlet of Fort Montgomery with MTBE.

## II.    JURISDICTION AND VENUE

2.    Jurisdiction over this action is conferred by 28 U.S.C. § 1332(a) (diversity
jurisdiction). The matter in controversy is between citizens of different states, and the
amount in controversy for each plaintiff controversy for each plaintiff exceeds the sum
of $75000.00

3.    A substantial part of the actions giving rise to this Complaint took place in this
District, and the property affected by defendants' actions are located in this District.
Venue is therefore proper in this District pursuant to 28 U.S.C. § 139 1(a)(2).

## III.    PARTIES

4.    Plaintiffs are citizens of New York who currently own, lease, rent and otherwise
are entitled to the exclusive use and possession of residential, commercial and other
property in the State of New York, County of Orange, Town of Highlands, Hamlet of
Fort Montgomery. Plaintiffs presently have the exclusive right to appropriate and use
groundwater produced by wells on their property.

5.    Defendants' actions, as described below, adversely affect plaintiffs' use and
enjoyment of their property and groundwater, harm plaintiffs' health and well being, and

cause financial harm by reducing property values and forcing plaintiffs to seek alternative water sources.

6.      Plaintiff Robert Basso is an adult citizen and a resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York. Mr. Basso, both as an individual and as a principal in M and R Market, which is a domestic corporation organized, operating and existing as a citizen under the laws of the state of New York resides and operates his business at 121 Fire Fighters Memorial Drive, 10922. In, addition until August 2002, Mr. Basso rented property at 14 Montgomery Road, Fort Montgomery, NY 10922. These properties rely on wells for their water supply needs. Water samples taken from these wells have shown MTBE contamination. At both of these addresses, Mr. Basso relies (and/or relied) for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property. At the 121 Fire Fighters Memorial Drive address, M and R Market relies on its water supply for the commercial purposes of running a food services business. There is no other water supply that could be used or that is available to be used except for bottled water.

7.      Plaintiffs Keith and Sandra Bogardus are adult citizens and a residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an interest in property on which she resides at 11 Garrison Road. The Plaintiffs Keith and Sandra Bogardus rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated With MTBE.

There is no other water supply that could be used or that is available to be used except for bottled water.

8.      Plaintiffs Ronald and Joan Buchholz are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an interest in property on which she resides at 7 Highland Avenue. They reside therein with their three minor children, Plaintiffs Eric, Alexander and Dylan Buchholz. The Plaintiffs Ronald and Joan Buchholz and their three minor children, Plaintiffs Eric, Alexander and Dylan Buchholz rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

9.      Plaintiff Stacy Camacho is an adult citizen and a resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and has an interest in property on which she resides at 10 Fulton Road. She resides therein with her two minor children, Plaintiffs Elizabeth Guadalupe and Louis Guadalupe. The Plaintiff Stacy Camacho and her two minor children, Plaintiffs Elizabeth Guadalupe and Louis Guadalupe rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from her well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

10.     Plaintiffs Chris and Tracie DeSpirito are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an interest in property on which they reside at 6 Miles Lane. They reside therein with their minor child, Plaintiff William DeSpirito. The plaintiffs Chris and Tracie DeSpirito and their minor child, Plaintiff William DeSpirito rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

11.     Plaintiffs Denise and James Linderman are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an interest in property on which she resides at 15 Garrison Road. The plaintiffs Denise and James Linderman rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

12.     Plaintiffs John and Ann Quattrocchi are adult citizens and a residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an interest in property on which they reside at 28 Owens Farm Road. They reside therein with their three minor children, Plaintiffs John T., Damon and Elaina Quattrocchi. The Plaintiffs John and Ann Quattrocchi and their three minor children, Plaintiffs John T., Damon and Elaina Quattrocchi rely for drinking, bathing, cooking,

cleaning, and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

13.    Plaintiff Carin Savage is an adult citizen and a resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and has an interest in property on which she resides at 129 Canterbury Road. The Plaintiff Carin Savage relies for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from her well have shown that her water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

14.    Plaintiffs Cheryl and Michael Shrieve are adult citizens and a residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an interest in property on which she resides at 42 Canterbury Road. They reside therein with their two minor children, Plaintiffs Richard and Derrike Shrieve. The Plaintiffs Cheryl and Michael Shrieve and their two minor children, Plaintiffs Richard and Derrike Shrieve rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from their well have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

15.    Defendants Sunoco, Inc., and Sunoco (R&M) f/k/a Sun Company, Inc. (R&M) (Sunoco) are citizens of Pennsylvania and Delaware. Both are foreign corporations organized under the laws of Pennsylvania, with their principal places of business in

Philadelphia, Pennsylvania, and their principal executive offices located in Wilmington Delaware. Both regularly conduct business in the State of New York.

16.     Defendant Mobil Corporation is a citizen of Texas. Mobil Corporation is a foreign corporation organized under the Laws of the State of Texas with its principal place of business in Irving, Texas. Mobil Corporation regularly conducts business in the State of New York.

17.     Defendant Exxon Mobil Corporation f/k/a Exxon Corporation is a citizen of Texas. Exxon Mobil Corporation f/k/a Exxon Corporation is a foreign corporation organized under the laws of the state of Texas, with its principal place of business in Irving, Texas. ExxonMobil regularly conducts business in the State of New York.

18.     Defendants manufactured, formulated, distributed, transported, packaged, sold, spilled, and/or released gasoline containing MTBE in the state of New York and were legally responsible for and committed each of the tortious and wrongful acts alleged in this complaint.

## IV.    FACTS

### A.    The Contaminants: MTBE and TBA.

19.     MTBE is an additive to gasoline. As used herein, MTBE consists not only of methyl tertiary butyl ether, but also the contaminants in commercial grade MTBE as well as the following oxygenates and ethers, including, but not limited to, TAME, DIPE, and ETBE.

20.     TBA is present in some gasoline. TBA is variôusly a gasoline constituent, an impurity in commercial grade MTBE, an a degradation or breakdown product of MTBE.

21.    MTBE and TBA contami ate the environment through leaks and spills from gasoline delivery systems. Once release to the environment, MTBE and TBA have unique characteristics that cause extensive environmental contamination and a corresponding threat to the public health and welfare. In particular, the fate and transport of MTBE and TBA in the subsurface differs significantly from that of gasoline constituents that have historically been of environmental and/or toxicological concern, specifically the "BTEX compounds" (benzene,toluene, ethyl benzene, and xylene).

22.    Once released into the subsurface, MTBE and TBA separate from other gasoline constituents in the presence of moisture. In contrast to the BTEX compounds, MTBE and TBA have a strong affinity, for water. If MTBE and/or TBA are released into the environment in sufficient quantities, MTBE. and/or TBA have the capacity to migrate through the soil, the groundwater, penetrate deeper within the aquifer, and cause persistent contamination that can threaten the potability of drinking water wells.

23.    MTBE and TBA spread further and faster than other components of gasoline, resist biodegradation, and are difficult a d costly to remove from groundwater and drinking water supplies.

24.    No federal or state agency has approved either MTBE or TBA as an additive to drinking water. No federal or state agency has approved releasing MTBE or TBA to groundwater.

25.    Along with its other properties, MTBE can render water supplies undrinkable by changing the taste and odor of water mt a foul smelling liquid with a turpentine odor and chemical taste unfit for human consumption. Individuals can smell and taste MTBE in water at levels below one part per billion (1 ppb).

26.    MTBE does not occur naturally, but is produced in large amounts from isobutylene, a by-product of the gasolin refining process. Isobutylene was previously considered a waste product that had to e disposed of, but now is used profitably by defendants. Various chemical companies also produce MTBE from tertiary-butyl alcohol. MTBE is a member of a class of chemical compounds (ethers), whose unique properties include enhanced solubility in water and chemical attraction to water molecules. MTBE constitutes approximately eleven percent (11%) by volume of the finished products ultimately sold at gasoline pumps.

27.    Unlike gasoline, which does not mix with water, MTBE mixes so well with water that it spreads faster and farther than other chemical components contained in gasoline. It does not attach readily to soil particles and is therefore not readily susceptible to natural biodegradation. In technical terms, MTBE has a low octanol water partition coefficient and high solubility in water, particularly as compare to the other major constituents of gasoline. Moreover, MTBE exacerbates pollution by other constituents of gasoline.

**B.    Defendants' Promotion of MTBE and TBA.**

28.    Defendants have promoted the use of gasoline containing MTBE and/or TBA for its purported environmental benefits, while they knew or should have known of the

grave harm and threat to the public health and welfare presented by the proliferating use of this compound. Such harm includes (among other things): widespread pollution of groundwater with MTBE and/or TBA, contamination of drinking water by these compounds, rendering drinking water supplies unfit and unusable for consumption, public health threats, and increased costs to water users.

29.    Despite knowing that MTBE and/or TBA pollution was inevitable, and despite the availability of reasonable alternatives (including but not limited to adequate warnings) defendants chose not to warn customers, retailers, public officials, or plaintiffs. As production and sales of these compounds, and gasoline containing them increased, defendants failed to take any reasonable, appropriate, and special precautions to store gasoline containing MTBE and/or TBA safely, or to prevent, detect and clean-up spills and leaks of gasoline containing this product. Despite knowing the risk of harm posed by MTBE and/or TBA, defendants also failed to warn purchasers, the public, regulators, and/or plaintiffs that without such precautions more and more MTBE and/or TBA would be released into the environment and cause, among other significant adverse effects, long term groundwater contamination and pollution of water supplies, including plaintiffs' water supplies.

30.    Defendants further exacerbated the situation by continuing unreasonable and negligent acts, including providing gasoline containing MTBE and/or TBA to gasoline stations without appropriate warnings. and without taking other precautions adequate to prevent releases of MTBE and/or TBA to the subsurface, owing that release to the environment of this compound would be inevitable because gasoline stations would

store such gasoline without taking reasonable, appropriate or special precautions, including by placing the gasoline in inadequate and leaking gasoline delivery systems, and without taking reasonable, appropriate, or special measures to monitor, detect, and respond to releases of MTBE and/or TBA to soil and/or groundwater, and without taking reasonable, appropriate or special precautions to investigate, contain and clean up releases of these compounds.

31.    At all times, defendants have represented to purchasers of MTBE, TBA and/or gasoline containing MTBE and/or TBA, as well as to the public and government agencies, that such products were environmentally sound and appropriate ~or widespread production, distribution, sale and use. Indeed, defendants represented that gasoline containing MTBE could be handled the same as ordinary gasoline, and required no special measures to protect against or respond to suspected releases to the subsurface.

32.    Defendants had a duty (which they breached) to test MTBE and TBA thoroughly to determine their environmental fate and transport characteristics, and potential human health impacts before they sold MTBE, TBA and/or gasoline containing MTBE and/or TBA. Defendants had a further duty (which they also breached) to take precautions necessary to assure that gasoline containing MTBE and/or TBA was properly stored and to institute all necessary measures to contain and promptly abate the inevitable spills and leaks. Defendants, and each of them, failed adequately to test, store, warn out, or control gasoline containing MTBE and/or TBA, and, among other things, failed to ab e groundwater contamination caused by MTBE and/or TBA.

33.    The widespread problems of leaking gasoline delivery systems were well known to the defendants prior to the time that defendants began adding MTBE and TBA to the gasoline. At least as early as the mid- 1960's, these d,efendants knew, or reasonably should have known, that gasoline delivery systems suffer significant and widespread leaks and~failures, and release gasoline products into the environment, including into groundwater.

34.    Before introducing MTBE and/or TBA into gasoline delivery systems that defendants knew to be faulty, the defendants knew, or reasonably should have known, that MTBE and/or TBA released into the environment would mix easily With groundwater, move great distances, resist biodegradation and/or bioremediation, render drinking water unsafe and/or non-potable, cause significant expenses to remove from drinking water supplies, and otherwise threaten public and individual health and welfare. Defendant's knew, or they reasonably should have known, that gasoline facilities, including those in Fort Montgomery, commonly lacked adequate storage facilities for gasoline containing MTBE and/or TBA, and that the operators of these facilities were unaware of either the special hazards of MTBE and/or TBA or the steps necessary to eliminate or mitigate those hazards.

35.    At all times relevant to this action the defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided MTBE and/or TBA, and/or gasoline containing MTBE and/or TBA, to retail gasoline stations and/or other gasoline delivery systems within or near Fort Montgomery. MTBE and TBA take

time to migrate from release points to locations within the subsurface at which they have an appreciable impact on groundwater resources. MTBE and TB have over time migrated in the subsurface from dispersed release points at, or near the urface at retail gasoline facilities within or near Fort Montgomery, causing pollution, contamination, and substantial damage to the groundwater beneath plaintiffs' properties and Fort Montgomery, and damaging plaintiffs at such times and in amounts to be'proved at trial.

## V.    NATURE OF THE CASE

36.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 35 as though set forth fully here.

37.    One or more plumes of defendants' MTBE has contaminated each of the plaintiffs' wells located on their respective real properties located in the Town of Highlands, in the Hamlet of Fort Montgomery, County of Orange, State of New York (the Town).

38.    The plaintiffs' respective wells are plaintiffs' only source of water.

39.    At extremely low concentrations (less than one part per billion "ppb" in one industry sponsored study), MTBE can change the taste and odor or groundwater into a foul smelling liquid with a chemical odor and taste which renders the water unfit for human consumption. MTBE is known to cause cancer in animals and is linked to a wide variety of threats to human health.

40.    Defendants have contaminated plaintiffs' wells forever, thus destroying their only water supply.

41.    Defendants marketed MTBE-gasoline in Fort Montgomery, when they knew (or reasonably should have known) that MTBE would reach groundwater, pollute drinking water supplies, and threaten the public health. In particular defendants have known for at least three decades that UST systems leak and cause extensive contamination that cannot be removed from ground water or well water.

42.    The problems of leaking gasoline systems haye been well documented for decades. Historically, the industry took few, if any, measure's to protect the public and the environment against leaks from the UST systems. By some estimates, fifty percent of these UST systems leak.

43.    Defendants failed to test MTBE adequately for environmental fate, human health risks, and potential for contaminating groundwater. Defendants failed to take adequate steps to assure that MTBE would not reach groundwater, pollute the environment, and ruin drinking water supplies, and failed to warn purchasers, regulatory officials, the public, and plaintiffs in this case of the dangers of MTBE.

44.    In approximately 1980, defendants began using MTBE as a gasoline additive to boost octane in the State of New York. Despite the defendants' knowledge of the dangerous characteristics of MTBE and its propensity to contaminate groundwater, defendants formed joint task forces and committees that misrepresented to the

government and the public the true characteristics of MTBE in order to pave the way for MTBE to become one of the most widely used products in the United States.

45.    As a result of the introduction of MTBE-laden gasoline and the subsequent increase in the concentrations and distribution of the gasoline additive, MTBE has become the second most widespread organic pollutant in the State of New York's groundwater.

46.    MTBE has caused a statistically significant increase in the incidence of cancer in scientific studies conducted on at least two species of laboratory animals by multiple routes of exposure. The independent scientific community generally classifies any chemical with these characteristics as probable human carcinogen. In these studies, exposure to MTBE was associated with leukemia, lymphomas, testicular tumors, kidney cancer and liver cancer. Two metabolic by-products of MTBE (formaldehyde and tertiary butyl alcohol "TBA" have also caused cancer in scientific experiments.

47.    Defendants promoted the use at the same time that they knew or should have known of the terrible downside of the proliferating use of the compound: widespread pollution of groundwater, contamination of drinking water, and threats to public health.

48.    Despite knowing that MTBE pollution was inevitable, defendants chose not to warn customers, retailers, or owners, including plaintiffs, until it was too late. As MTBE production and sales soared to record heights, defendants failed to warn that unless special precautions were taken, and prompt efforts were made to prevent, detect and

clean up spills and leaks, more and more MTBE would be released into the environment and cause long term groundwater, and well water contamination.

49.    Defendants, further exacerbated the situation by indiscriminately selling gasoline containing MTBE to gas stations without appropriate warnings and precautions: (1) knowing that gasoline stations would store gasoline containing MTBE in leaking UST systems; (2) knowing that gasoline stations possessed antiquated, rusted, and compromised gasoline systems which had not been upgraded or replaced; (3) knowing that gasoline station owners/operators and environmental consultants would not test samples at release sites for the presence of MTBE (a necessary part of any remedial program) unless warnings were given; and (4) in the case of Fort Montgomery, knowing or being charged with knowledge of the fact that due to the contours and makeup of the area where the UST system s were placed, the UST systems would ultimately leak.

50.    MTBE was discharged from UST systems located at gasoline stations at 805 Route 9W in the Town (Sunoco station), said property identified in the records of the Town and the Orange County Clerk, State of New York as Section 16, Lot 2, Block 1.2, and at 1086 Route 9W in the Town (Exxon Mobil station), said property identified in the records of the Town and the Orange County Clerk, State of New York as Section 12, Lot 1, Block 2. These stations were owned and/or operated and/or controlled nd/or supplied with MTBE laden gasoline by the defendants in wanton, reckless and negligent disregard for the health and safety of the plaintiffs.

51.    Profit was the motivating factor behind the defendants wanton, reckless, and negligent use of MTBE in gasoline sold a the above-mentioned locations. Defendants

had a choice to use cleaner additives other than MTBE to boost octane burn more cleanly, but chose not to use their additive.

52.    Plaintiffs seek a mandatory injunction to compel defendants, jointly and severally, to pay for plaintiffs' environmental and other consultants and/or a court supervised program of continuous and frequent sampling and analysis of plaintiffs' respective well water to test and monitor the levels of MTBE and pther contaminants that have contaminated the plaintiffs' wells as a result of defendants' wanton, reckless and negligent acts. Plaintiffs also seek an order directing defendants to provide bottled water until a replacement water system is installed to provide each plaintiff with water that is uncontaminated by MTBE. This would require an independent water source other than well water in the Town, and the building of a municipal water and sewer system that d aws clean and safe uncontaminated water suitable for all the needs of the plaintiffs.

53.    Plaintiffs also seek compensatory damages to recover for the capping of their wells, the loss in value of their homes and properties, lost income from investment and commercial properties and businesses, temporary replacement water, stigma damages, personal injury damages for and including but no limited to reckless and negligent infliction of emotional distress, to be protected from any claim and future claims brought against plaintiffs from guests of their homes, renters, customers of bu messes, lessors or any others who have been exposed to the MTBE contaminated water on plaintiffs' respective properties, and for future medical expenses caused by the reckless, negligent and wanton acts of the defendants, and all other costs associated thereto.

54.    Plaintiffs also seek punitive damages in an amount great enough to punish these defendants. The harm suffered by plaintiffs was and is as a result of the defendants' acts and omissions, and such acts and omissions were actuated by actual malice or accompanied by a wanton or willful disregard for the safety of plaintiffs, who foreseeably were harmed by the exposure to and contamination of their property by MTBE. Defendants owed a duty to plaintiffs to safeguard and inform plaintiffs regarding the risks of MTBE. Defendants breached this duty, and engaged in intentional wrongdoing motivated by greed and profit, with the knowledge that UST systems would leak gasoline containing high levels of MTBE into the ground and groundwater, and eventually find its way into plaintiffs' wells and real property. Defendants were aware of scientific evidence showing hat MTBE will persist in groundwater for decades. The defendants failed to immediately notify the plaintiffs of the dangers and potential dangers and to remediate the contaminated wells and real property, and still have not remediated the plaintiffs' wells or real property. Defendar ts permitted MTBE to spread to plaintiffs' real property and wells without timely and adequate warning and without concern for the health and safety of plaintiffs, in order to avoid the he. vy burden and costs to themselves and or their shareholders. Defendants placed gasoline obtaining MTBE into UST systems knowing that the chemical possessed special dangers and on e it reaches water, there is no way to remediate it therefrom and did indeed deliberately act o negligently act or failed to act with knowledge of a high degree of probability of harm to plaintiffs and with reckless, wanton and negligent disregard of the consequences of such actions is or omissions upon the safety and rights of others.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (Strict Liability)

55.    Paragraphs 1 through 54 are incorporated by this reference as though set forth in full.

56.    The defendants designed, formulated, compounded, manufactured, packaged, merchandised, advertised, promoted, distributed, and/or sold gasoline containing MTBE and/or TBA. Defendants' design and manufacture of these products was defective, and defendants failed to adequately warn against the danger of these products.

57.    The defendants represent, asserted, claimed and warranted that gasoline containing MTBE and/or TBA could be used in the same manner as gasoline not containing these compounds, and/or that gasoline containing MTBE and/or TBA did not require any different or special handling or precautions.

58.    Defendants knew that said product(s) were to be purchased and used without inspection for defects.

59.    MTBE and/or TBA, and gasoline containing MTBE and/or TBA in gasoline if any, are defective products because, among other things:

(a)    The benefits of using MTBE and/or TBA in gasoline, if any, are greatly outweighed by the associated costs and negative impacts imposed on society consumers, and the environment;

(b)    MTBE and/or TBA, and gasoline containing MTBE and/or TBA cause extensive groundwater contamination even when used in their foreseeable and intended manner;

(c)    Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying as drinking water to the public, and TBA also renders water unfit for drinking;

(d)    MTBE and TBA pose significant threats to the public health and welfare;

(e)    The defendants failed to provide adequate warnings of the known and foreseeable risks of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA, including but not limited to groundwater contamination with MTBE and/or TBA;

(f)    The defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of MTBE and/or TBA; and

(g)    Commercial grade MTBE s defectively manufactured when it contains unnecessary but environmentally harmful impurities such as TBA.

60.    MTBE and/or TBA and/or gasoline containing MTBE and/or TBA were used in a manner in which they were foreseeably in ended to be used, and as a proximate result of the defects previously described, MTBE and/ r TBA directly and proximately caused plaintiffs to sustain the injuries and damages set forth in this Complaint.

61.    Defendants knew that it was substantially certain that their alleged acts and omissions described above would threaten public health and cause extensive

contamination of water supplies and property damage. These defendants committed each of the above described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with conscious disregard of the health and safety of others, and of plaintiff's rights.

62.     Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA in conscious disregard of the known risks of injury to health and property. Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon plaintiffs.

63.     For all of the above reasons, plaintiffs are entitled to an award of exemplary and punitive damages against defendants in an amount sufficient to punish defendants and to deter such conduct in the future.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Negligence)**

64.     Paragraphs 1 through 63 are incorporated by this reference as though set forth in full.

65.     Defendants had a duty to use due care in the design, formulation, manufacture, handling, control, disposal, sale, testing, labeling, use, and instructions for use of gasoline containing MTBE and/or TBA and gasoline delivery systems.

66.     The defendants so negligently, carelessly, and/or recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or the lack thereof), tested (or the lack thereof), failed to warn, released, spilled, and/or sold MTBE and/or TBA, and/or so negligently, carelessly and recklessly dispensed, spilled, and released

gasoline containing MTBE and/or TBA and/or so negligently, carelessly, and recklessly dispensed MTBE and/or TBA into gasoline delivery systems, and/or so negligently, carelessly and/or recklessly designed, installed, operated and/or maintained gasoline pipelines and/or gasoline delivery systems for use with gasoline containing MTBE and/or TBA, that they breached their duties and directly and proximately caused MTBE and/or TBA to contaminate and pollute the plaintiffs' groundwater as alleged in this complaint.

67.    Defendants undertook to retain consultants to conduct environmental investigations and cleanups, thereby affirmatively undertaking the duty to detect and remediate releases of MTBE and/or TBA from gasoline delivery systems, but defendants negligently failed to properly discharge these duties.

68.    The defendants knew, or should have known, that gasoline delivery systems using defendants' products were leaking or prone to leak, but nonetheless negligently supplied, sold, and/or entrusted gasoline containing MTBE and/or TBA to these owner/operators, knowing that MTBE and/or TBA would leak into the soil and contaminate groundwater.

69.    As a direct and proximate result of the act and omissions of the defendants herein, plaintiffs have sustained the costs and injuries set forth in this Complaint.

70.    For all of the above reasons plaintiffs are entitled to an award of exemplary and punitive damage against defendants.

**AS AND FOR A THIRD CAUSE OF ACTION**

**(Trespass)**

71.    Paragraphs 1 through 70 are incorporated by this reference as though set forth in full.

72.    Plaintiffs are owners and/or actual possessors of property rights and interests in Fort Montgomery, Town of Highlands, including the right to appropriate and use groundwater and to protect that groundwater from contamination and pollution. Defendants, their agents and employees, knew or in the exercise of reasonable care should have known, that MTBE and/or TBA is extremely hazardous to and would invade groundwater and water supplies, including the property and other rights of plaintiffs.

73.    The defendants so negligently, recklessly and/or intentionally released, spilled, and/or failed to properly warn, control, handle, store, contain, and use gasoline containing MTBE and/or TBA, and/or clean up spills and leaks of MTBE and/or TBA, that they directly and proximately caused MTBE and/or TBA to contaminate plaintiffs' property as follows:

(a)    The defendants participated in the use, storage, and release of MTBE and/or TBA by owning, controlling, regulating, designing, installing, operating, monitoring, inspecting and testing, or by failing to do so, the pipelines and/or gasoline delivery systems and thereby proximately caused gasoline containing MTBE and/or TBA to be released into groundwater;

(b)    Defendants negligently, recklessly, and/or intentionally provided inadequate instructions and/or warnings concerning MTBE and/or TBA, knowing that there was a substantial danger that if inadequate instructions and/or warnings were

followed, gasoline containing MTBE and/or TBA dispensed into gasoline delivery systems and pipelines would escape into the environment and contaminate groundwater;

(c)    Defendants negligently, recklessly, and/or intentionally sold and/or delivered (directly or indirectly) gasoline containing MTBE and/or TBA to gasoline delivery systems which the)k knew, or should have known, were inadequate, old, leaking, and/or defective, and thereby created a substantial known danger that MTBE and/or TBA would be released into the environment and contaminate groundwater; and negligently, recklessly, and/or intentionally provided instructions and/or warning concerning MTBE and/or TBA, knowing that there was a substantial danger that if inadequate instructions and/or warnings were followed, gasoline containing MTBE and/or TBA dispensed into gasoline delivery systems would escape into the environment and contaminate groundwater;

(d)    Defendants retained consultants and negligently, recklessly, and/or intentionally controlled and/or directed their cleanup and remediation activities (or the lack thereof) at gasoline station sites and pipelines, thereby causing and permitting MTBE and/or TBA to contaminate and pollute the plaintiffs' property, and defendants failed to warn appropriate entities and individuals, including plaintiffs, of known risks spills, releases and/or leaks, and/or failed to undertake reasonable, appropriate or necessary action to reduce, remediate, or abate MTBE and/or TBA groundwater contamination.

(e)    When defendants learned, or reasonably should have learned, that MTBE and/or TBA was a persistent, significant and/or widespread source of groundwater

contamination, or threatened to become so, defendants failed to warn the appropriate entities and individuals, including plaintiffs, of known risks, spills, releases and/or leaks, and/or failed to undertake reasonable, appropriate or necessary action to reduce, remediate, or abate MTBE and/or TBA groundwater contamination.

74.    The MTBE and/or TBA contamination of the groundwater in the area of Fort Montgomery has varied and will vary over time and requires investigation, remediation, abatement, and/or treatment. Plaintiffs have been exposed to MTBE and have been forced to obtain replacement water supplies and otherwise attempt to mitigate the damage caused by defendants, and have thereby sustained the damages alleged herein.

75.    As a direct and proximate result of the defendants' trespass as alleged herein, plaintiffs have sustained the costs and injuries set forth in this Complaint.

76.    For all of the above reasons, the plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR  FOURTH CAUSE OF ACTION
### (Nuisance)

77.    Paragraphs 1 through 76 are incorporated by this reference as though set forth in full.

78.    The negligent, reckless, intentional, and ultra hazardous activity of the defendants alleged herein has resulted in the contamination and pollution of the plaintiffs' groundwater as alleged herein and constitutes both a public and a private nuisance.

79.    Plaintiffs are specially and adversely affected by the nuisance created by the defendants.

80.    The nuisance caused by defendants, and each of them, has substantially interfered with and obstructed the plaintiffs' use and enjoyment of their property, and their rights to a water supply free from unacceptable health risk, taste, odor, color, pollution and contamination.

81.    Plaintiffs own and hold property rights and interests damaged by the nuisance. Plaintiffs' injuries are separate and distinct from that of the public.

82.    Plaintiffs have not consented to this nuisance. Defendants knew or should have known that plaintiffs would not consent to this nuisance.

83.    As a direct and proximate result of the nuisance, plaintiffs have sustained the costs and injuries set forth in this Complaint, and are entitled to such appropriate relief as plaintiffs may elect at trial, including, but not limited to, equitable relief in the form of an order requiring defendants to abate the nuisance.

84.    For all of the above reasons, plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Declaratory Relief)

85.    Paragraphs 1 through 84 , are incorporated by this reference as though set forth in full.

86.    Defendants knew, or should ha known, that gasoline containing MTBE and/or TBA, used in a foreseeable and intended manner, is dangerous and, creates an unreasonable and excessive risk of harm to human health and the environment.

87.    The defendants intentionally, willfully, deliberately and/or negligently failed to properly design, manufacture, distribute, design, control, test, and/or sell MTBE and/or TBA and/or gasoline delivery systems and warn users of the substantial and unreasonable threats to human health and safety and the environment which results from the foreseeable and intended use and storage of MTBE and/or TBA.

88.    Among other things, plaintiffs must take costly remedial action to secure alternative water supplies, which will result in substantial costs, expenses and damages.

89.    An actual controversy exists concerning liability arising out of actual or threatened pollution or contamination of the plaintiffs' groundwater and water supplies.

90.    For all of the above reasons in order to resolve this controversy, plaintiffs seek an adjudication of the respective rights and obligations of the parties, in conjunction with an award of damages, to the extent necessary to provide full relief to the plaintiffs.

### AS FOR A SIXTH CAUSE OF ACTION
### (Intentional Interference with Right to Appropriate Water)

91.    Paragraphs 1 through 90 are incorporated by this reference as though set forth in full.

92.    In the State of New York, the right to appropriate water from the ground or other water sources constitutes an interest in real property. The negligent, reckless, intentional, and ultra hazardous activity of defendants, and each of them, alleged herein has invaded plaintiffs' usufructuary right to utilize wells and draw water from the local aquifer.

93.    As a direct and proximate result of the in interference with plaintiffs' right to appropriate water as alleged in this complaint, plaintiffs have sustained the costs and injuries set forth in this Complaint.

94.    For all of the above reasons, plaintiffs are entitled to an award of exemplary and punitive damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (New York General Business Law §349 - Unfair Competition)

95.    Paragraphs 1 through 94 are incorporated by this reference as though set forth in full.

96.    The defendants' conduct described above constitutes unlawful, unfair, and fraudulent business practices, and unfair, deceptive, untrue and/or misleading advertising in violation of New York General Business Law §349.

97.    New York General Business Law §349 allows "any person who has been injured by reason of a violation of this section to bring any action" to recover damages.

98.    New York General Business Law §349 further provides that the court may increase the award of damages to an amount not to exceed three times the actual damages.

99.    By committing the acts alleged in this complaint, defendants have engaged in, and continue to engage, in unlawful, unfair or fraudulent business practices within the meaning of New York General Business Law §349.

100.    Defendants have been in violation of, and continue to violate, New York's General Business Law §349 by, in the course of their business, falsely representing

MTBE as environmentally safe and by acting and/or failing to act as described in this complaint.

101.    As a direct and proximate result of defendants' deceptive and misleading conduct as alleged in this Complaint, plaintiffs have sustained the costs and injuries set forth in the Complaint.

102.    For all of the above reasons, plaintiffs are entitled to an award of exemplary and punitive damages.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**(Outrageous Conduct C using The Infliction of Emotional Distress)**

103.    Paragraphs 1 through 102 are incorporated by this reference as though set forth in full.

104.    Defendants' actions as set forth above were reckless and outrageous, exceeding all reasonable bounds of decency.

105.    Defendants' actions constitute outrageous conduct causing emotional distress and/or reckless infliction of emotional distress.

106.    Plaintiffs are entitled to recover damages for outrageous conduct causing emotional distress and/or reckless infliction of emotional distress.

107.    For all of the above reasons, plaintiffs are entitled to an award of exemplary and punitive damages.

**AS AND FOR AN NINTH CAUSE OF ACTION**
**(For Violation of Article 12 of the New York State Navigation Law - Strict Liability)**

108.    Paragraphs 1 through 107 are incorporated by this reference as though set forth in full.

Page 29 of  39

109.   Navigation Law § 181 provides that any person who has discharged petroleum of any kind and in any form, is strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained.

110.   In accordance with Navigation Law § 181, defendants are strictly liable for all damages to plaintiffs' person and property caused by the leakage, escape, release and/or discharge of petroleum and/or its related products, specifically MTBE, by defendants, as set forth in this Complaint.

111.   Plaintiffs are entitled to recover damages for violation of the Navigation Law on the basis of strict liability.

112.   For the reasons alleged above, plaintiffs are entitled to an award of exemplary and punitive damages.

### AS AND FOR A TENTH CAUSE OF ACTION
### (For Violation of Article 12 of the New York State Navigation Law - Negligence)

113.   Paragraphs 1 through 112 are incorporated by this reference as though set forth in full.

114.   Defendants knew or should have known that petroleum and its related products, specifically MTBE, would escape or be released into the groundwater from which plaintiffs obtain their water supply.

115.   Defendants had a duty of care to plaintiffs with regard to contamination of water supplies with MTBE.

116.   Defendants acted unreasonably and negligently in failing to warn of or prevent leakage, escape, discharge and/or release of the petroleum and related products, specifically MTBE and TBA.

117.    Defendants failed to take reasonable precautions to warn of or prevent the leakage, escape, discharge and/or release of these petroleum and related products.

118.    In accordance with Navigation Law § 181, defendants are strictly liable for all damages to plaintiffs' person and property caused by the defendants conduct as alleged in this complaint.

119.    Plaintiffs are entitled to recover for damages for violation of the Navigation Law on the basis of Defendants' negligence.

120.    For all of the reasons alleged above, plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (For Violation of Article 12 of the New York State Navigation Law - Nuisance)

121.    Paragraphs 1 through 120 are incorporated by this reference as though set forth in full.

122.    Defendants by their acts and omissions, or the acts and omissions of their agents or employees, have unreasonably and substantially interfered with plaintiffs' use of their property, including the groundwater and enjoyment here of plaintiffs' property.

123.    In accordance with Navigation Law § 181, and as a result of this nuisance, defendants are strictly liable for damages to plaintiffs' person and property.

124.    Plaintiffs are entitled to recover for damages for violation of the Navigation Law on the basis of defendants creating this nuisance.

125.    For all of the above reasons, plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR AN TWELFTH CAUSE OF ACTION
### (Failure to Warn)

126.    Paragraphs 1 through 125 are incorporated by this reference as though set forth
in full.

127.    As manufacturers, designers, distributors, suppliers, sellers and marketers of
gasoline containing MTBE, Defendants had a duty not to put on the market a product
that poses a serious danger to groundwater that is the source for plaintiffs' private wells
without issuing warnings of the risk posed by the product to Plaintiffs, the public, public
officials and Downstream Handlers.

128.    Defendants knew that gasoline mixed with MTBE would be purchased
transported, stored, handled, and used without inspection for defects related to the
hazards which MTBE poses to groundwater and private wells.

129.    At all times relevant to this litigation, Defendants have had actual and/or
constructive knowledge of the following facts which rendered MTBE hazardous to
groundwater and private wells throughout the Affected States:

    (a)    Unintended discharges of gasoline are commonplace throughout the
Affected States;

    (b)    When gasoline containing MTBE is released into the environment, MTBE
has a tendency to mix with groundwater and migrate great distances;

    (c)    MTBE is highly soluble in water and many times more soluble in water
than the other organic (BTEX) components of gasoline;

    (d).    When gasoline containing MTBE is released into the environment, MTBE
persists much longer than the other organic (BTEX) components of gasoline, because

MTBE is recalcitrant to biodegradation and bioremediation;

(e)     Very low concentrations of MTBE can ruin the taste and smell of water;

(f)     MTBE is a known animal carcinogen and a possible human carcinogen;

(g)     MTBE greatly increases the importance of preventing leaks of gasoline, and for the first time makes it necessary to prevent very small quantities of gasoline from escaping containment to avoid groundwater contamination;

(h)     MTBE increases the need to maintain underground storage tanks, prevent overfills, and respond immediately to the loss of any gasoline containing MTBE;

(i)     MTBE creates the need to issue warnings to all groundwater users in the area of any spill of gasoline containing MTBE;

(j)     MTBE creates the need for regular testing and monitoring of private wells for early detection of MTBE; and

(k)     The foregoing facts relating to the hazards which MTBE poses to groundwater are not the sort of facts which Plaintiffs, Downstream Handlers, and the general public could ordinarily discover or protect themselves against in the absence of sufficient warnings.

130.    Defendants breached their duty to warn by unreasonably failing to provide warnings concerning any of the facts alleged above to Plaintiffs, public officials, Downstream Handlers, and/or the general public.

131.    Defendants' failure to warn as alleged in paragraph proximately caused reasonably foreseeable damages to Plaintiffs. Had Defendants provided sufficient warnings, MTBE would not have gained approval in the marketplace for use in gasoline

and/or gasoline containing MTBE would have been treated differently in terms of procedures for handling, storage, emergency response and/or environmental clean-up. Since the source of MTBE in all contaminated wells and groundwater is gasoline, the absence of warnings was the proximate cause of all such contamination.

132.    As a direct and proximate result Defendants' above-described failure to give warnings, MTBE at all times relevant to this litigation has:

    (a)    posed and continues to pose a threat to private wells owned by Plaintiffs;

    (b)    required and/or will require testing and monitoring of private for MTBE contamination;

    (c)    contaminated private wells owned by Plaintiffs;

    (d)    required and will require remediation of MTBE groundwater contamination or, where remediation is impracticable, Plaintiffs with contaminated wells either to install a system to filter out MTBE or to obtain water from alternative sources, such as bottled water or connection to a local municipal or private water system;

    (e)    diminished and will continue to diminish confidence in, and the use and enjoyment of, Plaintiffs' water and property;

    (f)    diminished and will continue to diminish Plaintiffs' property value due to actual, impending, or threatened contamination; and

    (g).    stigmatized and will continue to stigmatize Plaintiffs based upon the perception that well water is now less safe than water from other sources.

133.    For all of the above reasons, plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR AN THIRTEENTH CAUSE OF ACTION
### (Market Share, Concerted Action, Enterprise and Alternative Liability)

134.   Paragraphs 1 through 133 are incorporated by this reference as though set forth in full.

135.   Defendants control a substantial share of the market for gasoline containing MTBE in the affected area described in this complaint and are therefore responsible for the increased threat to groundwater in that area and to the Plaintiffs herein.

136.   Market share liability attaches to all Defendants on all of the foregoing counts, and that liability of each shall be assigned according to its percentage of the market for gasoline containing MTBE the effected area at issue in this Complaint.

137.   MTBE is fungible, it is impossible to identify the exact defendant who manufactured any given batch of MTBE found free in the environment, and each of these Defendants participated in a state-wide and national market for gasoline with MTBE during the relevant time as well as for the area described in this Complaint.

138.   Paragraphs 1 through 137 are incorporated by this reference as though set forth in full. Concerted action liability attaches to all Defendants on all of the foregoing counts, each of which participated in a common plan to commit the intentional torts alleged herein and each of which acted tortiously in pursuance of the common plan.

139.   Paragraphs 1 through 138 are incorporated by this reference as though set forth in full. Enterprise liability attaches to all of the named Defendants on all of the foregoing counts.

140.   Paragraphs 1 through 139 are incorporated by this reference as though set forth

in full. Alternative liability attaches to all of the named Defendants on all of the foregoing counts.

141.    Paragraphs 1 through 140 are incorporated by this reference as though set forth in full. There are no limitations on liability as set forth in CPLR § 1601 applicable to this action in that one or more of the exceptions set forth in CPLR § 1602 apply, including subsections (5) and/or (11).

142.    For all of the above reasons, plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION -
### (Medical Monitoring)

143.    Paragraphs 1 through 142 are incorporated by this reference as though set forth in full.

144.    That Plaintiffs, on a date yet specified, were exposed to MTBE and other toxic substances through the tortious conduct of defendants as described above.

145.    That science has proven MTBE and the other toxic substances to be a hazardous substance that causes potential damage to the human body.

146.    That due to the negligence of the Defendants in failing to take the proper and available precautionary measures to ensure the safety of their products and their containment systems, Plaintiffs were exposed to MTBE and other toxic substances.

147.    That as a proximate result of the exposure to MTBE and other toxic substances, Plaintiffs have a significantly increased risk of harm.

148.    That there is a known monitoring procedure in existence to assist in the

evaluation and progression of the effects of  the exposure to MTBE and other toxic substances on Plaintiffs.

149.    That the known monitoring procedure in existence is different from that normally recommended in the absence of this exposure.

150.    That the prescribed monitoring procedure is reasonably necessary according to contemporary scientific principles to evaluate and study the progression and effects of the exposure to MTBE and other toxic substances on Plaintiffs.

151.    For all of the above reasons, plaintiffs are entitled to an award of exemplary and punitive damages.

## JURY DEMAND

142.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 141 and reallege same as if separately plead herein;

143.    Plaintiffs demand a trial by jury;

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, and each df them, request judgment against defendants, and each of them, for:

1.    Compensatory damages in excess of $75,000 for each plaintiff such amount to be determined at trial by a jury;

2.    Exemplary and punitive damages in an amount sufficient to punish defendants and to deter those defendants from ever committing the same or similar acts, such amount to be determined at trial by a jury;

3.    For an order (1) declaring that defendants are liable for the full cost of all

remedial and other actions necessary to abate MTBE that contaminates or threatens plaintiffs' wells, and (2) ordering that defendants continue to pay for and conduct testing and monitoring of the plaintiffs' wells, using plaintiffs' consultants, and to provide bottled water until a new clean, uncontaminated source of water is provided through a municipal water and sewer system;

4.    For the costs incurred herein in prosecuting this action, and prejudgment interest to the full extent permitted by law.

5.    Injunctive and equitable relief, for the Plaintiffs and the Class, as the Court deems appropriate, including:

    (a)    A Court-supervised testing program;

    (b)    A Court-supervised monitoring program;

    (c)    A Court-supervised data collection program;

    (d)    A Court-supervised program of notice to affected well-owners;

    (e)    Court-supervised public education program, including warnings regarding the environmental impact and the need for care in handling of MTBE;

    (f)    A Court-supervised program to provide Plaintiffs with clean water, free of MTBE contamination;

    (g)    A Court-supervised program to provide remediation of contaminated wells; and

    (h)    A Court-supervised program to provide medical monitoring of Plaintiffs' health.

6.    Attorneys' fees and the costs and disbursements of this lawsuit; and

7.     For such other and further relief as may be deemed necessary, just and proper by this Court.


Dated:        November 16, 2003              Law Office of Peter D. Hoffman, PC
              Katonah, NY


                                    By:     Peter D. Hoffman, Esq. (8306)
                                            Law Office of Peter D. Hoffman, PC
                                            200 Katonah Avenue
                                            Village Commons East, 2d Floor
                                            Katonah, NY 10536
                                            (914) 232-2242     Phone
                                            (914) 232-2245     Facsimile